# MUTUAL TELEPHONE COMPANY *v.* HAWAIIAN CONTRACTING COMPANY, LIMITED.

## No. 1886.

Argued December 7, 1929.     Decided February 25, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is an action in trespass wherein the verdict was for the plaintiff in the sum of $2500. The case is before us on defendant's bill of twenty-seven exceptions, ten of which are to the giving of instructions numbered 4, 6, 9, 11, 13, 14, 15, 16, 17 and 19, requested by the plaintiff, sixteen of which are to the refusal to grant instructions numbered 4, 5, 6, 10, 13, 14, 17, 20, 21, 23, 25, 26, 27, 28, 30 and 31, requested by the defendant, and the remaining one of which is to the verdict as being contrary to the law and to the evidence. Plaintiff's amended declaration alleges, in part and in effect, injury to its line of poles and telephone wires on the Volcano Road caused by the "recklessness, wantonness and negligence" of the defendant, acting through its agents, servants, employees and others, in blasting operations connected with construction work on said highway. It further alleges want of contributory negligence on the part of plaintiff or any of its servants and prays for judgment in the sum of $9000, computed as follows: $3000 for damages to wires, poles, crossarms and other equipment, $1000 for loss of tolls in that amount, and $5000 as exemplary damages. Issue was joined by answer of general denial.

At the hearing evidence was introduced tending to show, among other things, certain facts which, with statutes applicable thereto, may be stated briefly as follows: The plaintiff is a public utility corporation, operating under rights granted it by the minister of the interior of the Hawaiian monarchy under Act 45, L. 1874, which Act conferred upon the minister of the interior the power to grant any company the right to construct and maintain a telegraph line upon the highways and public roads of the monarchy, "provided the same shall not be so constructed as to incommode the public use of such roads or highways." This Act, through revisions, is now section 907, R. L. 1925. Under the rights so granted the plaintiff

maintains a telephone line around the Island of Hawaii, part of the line being located on and running along the highway known as the Volcano Road. In the month of October, 1926, a contract was entered into between the Territory and the defendant for the construction of a concrete road from a point about twenty-three miles from Hilo on said Volcano Road to the boundary of the Hawaii National Park, a distance of about six miles. The contract price was about $315,000.

The plans for said road made considerable changes in the grade and a large number of deep cuts were provided for by the plans, which necessitated a considerable amount of blasting to remove the rock for the new grade. About 33,700 yards of rock were required to be removed. The telephone lines and poles were located on the government road or on government land near said road along the entire stretch of six miles, and some of the blasting was done either directly underneath plaintiff's lines or immediately alongside of them. Upon certain occasions prior to the building of the road the plaintiff removed and replaced part of its poles and lines in order to conform to the running of the road as projected. For a distance of about a mile where the line of telephone poles was on the direct path of the road the plaintiff temporarily moved its line out of danger, replacing the line upon the completion of the contract. This the plaintiff did at an expense of slightly over $300.

The contract between the Territory and the defendant contained, among other provisions, the following: "When or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission, neglect or misconduct in the execution of the work, or in consequence of the non-execution thereof on the part of the contractor, such property shall be restored by the contractor and at the contractor's expense, to a

condition similar or equal to that existing before such damage or injury was done, by repairing, rebuilding or otherwise restoring same, or he shall make good such damage or injury in an acceptable manner."

Defendant began work on this construction of the road shortly after the execution of its contract. Blasting was begun in November, 1926. With the first blasting one or two of plaintiff's lines of wire were broken, as a result of which the plaintiff's manager sought out the superintendent in charge of the defendant's work on this road and complained of damages to the wires and the interruption of the telephone service. At this interview the defendant's superintendent told the plaintiff's manager that it would be impossible or impracticable to prevent damage to plaintiff's wires and it was proposed and agreed upon between them that to avoid interruption of the telephone service that must necessarily follow, the defendant would pay the wages of a telephone lineman to be constantly present at the work and effect immediate repair to the wires as they would be blown down. Pursuant to this arrangement the plaintiff recommended the employment of one of its former employees and the defendant kept this man on the job throughout the entire period of blasting operations, giving him such assistance as he might need from time to time, which occasionally occurred when large blasts were made. The plaintiff made no further complaint to the defendant with reference to its blasting work and while it kept in constant touch with the work, made no objection to the method of defendant's operations nor the extent of the damage nor the frequency of service interruptions, nor was there any communication between the plaintiff and the defendant at any time until one or two months after the blasting operations were completed when, under date of October 4, 1927, the plaintiff wrote to the defendant stating that an inspection

of the line along the new road had been made by it which showed that it would be necessary to replace a portion of the line at an estimated cost of between $1200 and $1500, which it would charge to the defendant. Later, under date of January 10, 1928, the plaintiff wrote the defendant again, this time claiming $2916.07 as per an itemized statement enclosed therewith. This amount included a charge of ten per cent upon the items which upon the trial plaintiff's manager testified were "overhead." No claim was ever made for loss of business or tolls. According to plaintiff's testimony the inspection of the line made after the finish of the blasting operations disclosed that it would be necessary to replace forty miles of wire and to install other equipment such as poles, arms and insulators.

Upon the trial of this cause there was a conflict of evidence as to the extent of the damage done. The plaintiff claimed that this line which consisted of six wires was so badly chipped and dented by flying particles of rock as the result of the blasting throughout its entire length of six miles as to render it necessary to replace this entire line with new wires, while the defendant introduced evidence to the effect that no blasting operations took place at stretches which would aggregate a distance of three or four miles.

The plaintiff introduced evidence by testimony of witnesses that the damage caused by these explosions could have been avoided by the use of mats and other smothering devices, and the defendant introduced evidence to the effect that in its blasting operations it had used all practical means to avoid injury to plaintiff's wires; had used mats and smothering devices at certain portions of the road, and where smothering devices were not used it was because it was impracticable to use them, and that it knew that the use of such devices would not have prevented the damage.

In the briefs and argument of counsel neither defendant's twenty-seven exceptions nor the instructions given or refused by the court are discussed separately or in the order presented by the record; but the exceptions are segregated into seven groups, each group presenting a proposition of law urged by the defendant to be applicable to the case and to have been disregarded by the court in the rulings excepted to. The seven propositions above referred to are here restated as follows:

1. The defendant was liable only for negligence.

2. In the construction of the Volcano Road the defendant owed the plaintiff no duty of active vigilance or affirmative care and was liable only for wilful or wanton negligence.

3. The defendant enjoyed the same rights with respect to the manner and method of construction work as the government would have had if it had carried on the work itself.

4. Plaintiff's acquiescence in and approval of the manner in which the defendant was conducting blasting operations were circumstances for the proper consideration of the jury on the questions of the defendant's negligence and plaintiff's contributory negligence.

5. The plaintiff in this case as a matter of law was not entitled to punitive damages and this element should not have been submitted to the jury.

6. Plaintiff was not entitled to have submitted to the jury its claim of damages for loss of tolls.

7. Plaintiff's claim of $307.74 overhead on its account for labor and material should not have been submitted to the jury.

Defendant's foregoing propositions of law will be discussed in the order in which they are above stated.

1. Defendant liable only for negligence. This proposition is presented by exception 1 to the giving of plain-

tiff's request number 4, and by exceptions 15, 16, 19 and 26 to the court's refusal to give defendant's requests numbered 13, 14, 21 and 31 respectively. The proposition of law that in the absence of statutory provision there is no absolute liability on the part of a contractor while engaged in the repair or construction of a public highway under contract with the government for injury done by the necessary blasting operations of said contractor to the telephone lines of a public utility corporation occupying said highway under a franchise containing the reservations hereinabove set forth, is not controverted by the plaintiff who, however, denies its applicability to the facts before us. That negligence is the gist of an action in tort for damages or injuries caused by such blasting seems to be the generally recognized rule of law. Thus, "as to persons upon his premises and rightfully so, the person using explosives in blasting in a lawful and proper manner is liable only in case of negligence and need exercise only ordinary care. The rule that one who by blasting throws rock and material upon the adjacent land of his neighbor is liable for the damage resulting from such act without regard to the question of negligence, has no application where the person blasting has the right to the use of the land upon which the blasted material is thrown." 25 C. J. 195. See also 11 R. C. L. 673; 13 R. C. L. 178; *Murphy* v. *Lowell,* 128 Mass. 396; and *Scranton Gas Co.* v. *Scranton,* 214 Pa. St. 586, 64 Atl. 84, 6 L. R. A. (N. S.) 1033 and 6 An. Cs. 390, with cases cited in the footnotes. Quoting from 13 R. C. L. 98: "Public service corporations occupying a street under a franchise are held to have acquired their rights on the condition, implied where not expressed, that the city reserves the full and unconditional power to make any reasonable change of grade or other improvement in its streets. Hence, in the absence of negligence or wantonness on the part of the city, such

a corporation cannot maintain an action for damages occasioned by the necessity of taking up and relaying its pipes, tracks or other appliances, in order to accommodate them to the new grade. So the power of the municipality to change the grade of its streets whenever or as often as the public needs and convenience require, is not affected by the fact that a street is occupied by a railroad company under a franchise." See also *Gas Light & Coke Co.* v. *Columbus,* 50 Ohio St. 65, 33 N. E. 292, 40 A. S. R. 648, 19 L. R. A. 510.

Referring again to the plaintiff's declaration in the case at bar, it will be noted that the gravamen of the tort charged is the "recklessness, wantonness and negligence" of the defendant and that the declaration sets forth no cause of action based upon any other theory of liability— statutory or otherwise—and that the issue joined was upon the allegations above set forth. It follows, therefore, that a finding by the jury that the injury was proximately caused by negligence on the part of the defendant was essential to recovery by the plaintiff; that the defendant, if it so requested, was entitled to an instruction to that effect unless such instruction was elsewhere contained in the judge's charge and that refusal to give such instruction under the circumstances named and the giving of contrary instructions would constitute reversible error if duly excepted to.

Instruction number 4, given at plaintiff's request, to which defendant's exception numbered 1 applies, is as follows: "If you find from the evidence in this case that the defendant, in building the road from twenty-three miles to the edge of the Hawaii National Park, was acting under a contract entered into with the superintendent of public works, you are instructed that the defendant in the prosecution of such work was required to conduct the same in such a manner as not to injure the plaintiff's property by

blasting or by other dangerous instrumentalities." Why the first clause of this instruction, introduced by the words "if you find," was submitted to the jury is difficult to understand. That the defendant was so acting under such contract was not in dispute. Therefore, the second clause of said instruction, based as it was, not upon a hypothesis but upon an accepted fact, was equivalent to a charge to the jury as a matter of law that "the defendant in the prosecution of such work was required to conduct the same in such a manner as not to injure the plaintiff's property by blasting or by other dangerous instrumentalities." The legal obligation of the defendant was to use due care and to be free from negligence in the premises and without this qualification somewhere in the instructions, the giving of said instruction 4 was error. Nowhere in the charge to the jury can be found an instruction that negligence is the test of the defendant's liability.

Exception 15 is to the court's refusal to give defendant's request numbered 13, namely: "You are further charged that the defendant was not required as a matter of law to use all known means and devices to prevent injury to plaintiff's property, but it is a question of fact for you to decide whether under all the circumstances and conditions the defendant should reasonably have taken greater precaution than it did by reasonable and practicable methods to prevent damage to plaintiff's property, and in this connection you are charged that if the use of customary and practicable methods could not have prevented the damage, the defendant was not required to take precautions by such methods or devices." Exception 19 is to the court's refusal to give defendant's request numbered 21, namely: "You are charged that what is reasonable care in a given case is to be determined by the circumstances and facts of that particular case. The standard of care and diligence required by law is not the high-

est degree of care or the greatest diligence, but just ordinary care and reasonable diligence. Ordinary care and diligence is that care and diligence which every prudent man takes of his own property of a similar nature, or that care and diligence which every prudent man would exercise under similar circumstances and like surrounding; and in determining the care and diligence required or reasonably expected in any given case of damage, all of the facts and circumstances attending such damages, together with the duty owing to the person whose property has been so damaged, must be taken into consideration in determining whether or not any legal liability exists for such damages." In the circumstances and for the reasons above set forth, these two instructions should have been given and their refusal was reversible error.

Defendant's requested instruction number 14 was as follows: "You are also charged that if at the time of the work in question the defendant reasonably believed that the use of smothering devices was not practicable or could not prevent the damage to plaintiff's property, the defendant was justified in not attempting to use such smothering devices, and its failure to do so cannot be regarded as negligent." Defendant's reasonable belief as to the practicability or impracticability of precautionary measures is not the legal test as to whether or not the failure to use such measures constitutes negligence in the premises. The instruction was properly refused.

The following is defendant's requested instruction 31: "If you find from the evidence there was no practicable method to prevent the damage to plaintiff's property, the defendant was not required to make any attempt to prevent such damage." The word "practicable" has different meanings. One meaning is "capable of being performed or effected; performable; possible in point of execution." Volume 4 Century Dictionary, revised and enlarged edi-

tion, p. 4664. If this were the only meaning of the word, the defendant might have been entitled to the instruction requested. That, in such event, it would have been so entitled we do not decide. The word, however, has other meanings. One synonym given by Webster (New International Dictionary, 1921 edition, p. 1688) is "feasible" as for example "a practicable method." See also 6 Words and Phrases, 1st series, 5484, and *Rizer* v. *People* (Colo.), 69 Pac. 315. Two of several synonyms given by Webster for the word "feasible" are "suitable" and "reasonable." The Century Dictionary above quoted gives as two of several synonyms for the word "practicable" the words "desirable" and "advantageous." Its use has been upheld as conferring certain discretion. *Ford* v. *Ford,* 33 N. W. 188, 196, 70 Wis. 19, 5 A. S. R. 117, cited in 6 Words and Phrases, *supra.*

In any except the first of the meanings above set forth the instruction would have been legally objectionable. Without an instruction explaining to the jury the meaning in which the word "practicable" was used in instruction 31, the latter instruction was ambiguous and uncertain and for that reason the majority finds no error in the court's refusal to give the same. (The chief justice thinks that the instruction should have been given.)

2. The defendant's second point that "in the construction of the Volcano Road the defendant owed plaintiff no duty of active vigilance or affirmative care, and was liable only for wilful or wanton injuries" is raised by exceptions 3, 4, 5 and 10 to the giving of plaintiff's requested instructions numbered 9, 11, 13 and 19 and by exceptions 12, 13, 14 and 17 to the refusal of defendant's requested instructions numbered 5, 6, 10 and 17. This point is in a measure in conflict with defendant's first point which admits, and rightly so as we have held, liability on the part of the defendant in the event of a properly sustained finding by

the jury of negligence on the part of the defendant. It is based upon the theory that the plaintiff was a bare licensee in the premises and under the rule applicable to licensees entitled only to notice of concealed explosives and hidden dangers. See 25 C. J. 192. The rule invoked by defendant is thus quoted by it from 45 C. J. 796, 797: "The general rule is that there is no affirmative duty of care with respect to a mere licensee and no duty to protect him * * *. The most usual statement of the general rule is that no duty exists toward a mere licensee except to refrain from wilfully or wantonly injuring him * * *. Another expression of the rule is that the owner does not owe to a licensee any duty of active vigilance to see that he is not injured while on the premises. Accordingly a mere licensee has, as a general rule, no cause of action on account of an injury received through the negligence of the licensor on the premises to which the license extends."

Assuming but not deciding that the statement last above quoted is a correct statement of the rule as it is in force in Hawaii, its invocation by the defendant is ineffective for the reason that it cannot be applied to the facts in the present case. This is because the plaintiff is not a "mere licensee" within the meaning of the rule above quoted. Preceding the text above quoted from 45 C. J., on page 788, is the subhead "Who are Licensees." In footnote 76, p. 789, in support of the text is cited *Kinsman* v. *Barton*, 141 Wash. 311, 313, 251 Pac. 563, to the following effect: "A licensee is one who occupies a position somewhere between that of an invitee and a trespasser. He is a licensee because he has not been either expressly or impliedly invited on the premises in connection with the business therein carried on; but he is not a trespasser because he has the permission of the person carrying on the business to enter." Quoting from the introduction to voluminous case notes beginning on page 37, Vol. 36,

A. L. R.: "In considering the duty of the owner or occupier of premises to persons who come thereon, the law divides them into three categories—trespassers, licensees, and invitees. Invitees are persons who are invited to come upon the premises either expressly or (as in the case of a customer entering a store) impliedly. Licensees are persons whose presence is not invited, but tolerated. Trespassers are persons who are neither suffered nor invited to enter." Definitions of the term "mere licensee" are thus set forth in citations on page 126 of Volume 3, Words and Phrases (2d Ser.): "The terms 'mere licensee' or 'bare licensee' are often used as synonymous with 'trespasser.' *Pittsburgh, C., C. & St. L. R. Co.* v. *Simons* (Ind.) 76 N. E. 883, 886. A 'mere licensee' is one who is clothed with no right and to whom no invitation has been extended but who is upon the premises of another by permission or acquiescence. *Norfolk & W. Ry. Co.* v. *Denny's Adm'r*, 86 S. E. 321, 328, 106 Va. 383."

Counsel has cited, and we have been able to find, no instance in any action based upon trespass or negligence where the term "mere licensee" has been applied to a public utility, operating its lines upon or over a government highway under a right in the nature of a franchise granted by the head of the state or territorial department having legal control in such matters, acting conformably to a statute in such cases made and provided. In the circumstances named the term warrants no such application and therefore exceptions 3, 4, 5, 10, 12, 13, 14 and 17 present no error on the part of the trial court upon the grounds urged.

3. Defendant's third point that "defendant enjoyed the same rights with respect to manner and method of construction work as government would have had it carried on the work itself" is alleged to be raised by exception 2 to the giving of instruction 6 requested by plaintiff and

by exception 11 to the refusal of instruction 4 requested by the defendant. Instruction 6, given at plaintiff's request, is as follows.: "You are instructed that even if the defendant was acting under a contract with the superintendent of public works in the building of the highway at the places described in plaintiff's declaration, you are instructed that the defendant did not share with the Territory or the superintendent of public works any immunity from action by the plaintiff for any injury which it may have suffered by any negligent or wilful conduct of the work in building the road under such contract." This instruction in effect says that the defendant in the circumstances named cannot share governmental immunity and does not raise the precise point alleged as above set forth by counsel. That a private corporation, even though operating under governmental contract, cannot share privileges peculiar to state or territorial government is a truism which needs no supporting citation. We find no error in the giving of plaintiff's instruction numbered 6.

Defendant's requested instruction numbered 4 directly presents the proposition of law above set forth as defendant's third point. The court was requested to instruct the jury as follows: "In the prosecution of the work under the contract in evidence between the Territory and the defendant, the defendant could lawfully do what the Territory could do in the manner and means of construction." It will be noted that the request refers only to rights with respect to the manner and means of construction, and in the circumstances of the case, does no more than tell the jury that in said circumstances and for said purposes the defendant occupied with reference to the plaintiff and to the public generally the same position it would have occupied if it had been the owner of said premises. That this is a correct statement of the law was held in effect in *Portsmouth Gas Light Co.* v. *Shanahan,* 65 N. H. 233, 242,

19 Atl. 1002. This was an action by a gas company to recover damages for injury to its pipeline caused by blasting done by the defendant while engaged in constructing a sewer system under contract with the city of Portsmouth. The supreme court of New Hampshire, referring to the status of the defendant as such contractor, held: "The defendant was the city's servant or agent. In building the sewer, he could lawfully do whatever the city could do. He was authorized to do what was necessary to be done in the construction of the sewer." To the same effect is a ruling in *Smith* v. *Day*, 86 Fed. 62, 66. In that case the defendants were engaged as contractors for the government in making rock excavations for locks then in course of construction. The plaintiff boarded a boat of a navigation company at a point some little distance from where the blasting was done and while dozing on the deck was struck by a rock thrown by one of the blasts. In that case the court said: "For the purposes of this case the defendants must be held to be for the time being the owners of the premises where the injury occurred."

Plaintiff in this connection argues that in order to determine what rights the defendant had in the premises resort may be had to the provisions of defendant's contract with the government, introduced as exhibit "K," regarding the preservation and restoration of property, quoted in part in the statement of facts with which this opinion opens, which contract the plaintiff asks us to treat as a "restrictive license" determining defendant's said rights. But it has been frequently held, and we believe rightly so, that provisions of this character in an agreement should be construed as in the nature of a contract of indemnity between the government and the contractor. A third person cannot, in an action in tort, avail himself of any restrictive provisions or terms in such a contract even if made for his benefit. See *Corrigan Transit Co. v.*

*Sanitary District of Chicago,* 137 Fed. 851; *United States* v. *C. A. Riffle Co.,* 247 Fed. 374; and *Conklin* v. *Staats,* 70 N. J. L. 771.

For the reasons above given the circuit court erred in refusing to give defendant's requested instruction numbered 4.

4. Defendant's fourth point is repeated as follows: "Plaintiff's acquiescence in and approval of the manner in which defendant was conducting blasting operations were circumstances for the proper consideration of the jury on the question of defendant's negligence and plaintiff's contributory negligence." This point is raised by exceptions 18, 20 and 25 to the refusal of defendant's requested instructions numbered 20, 23 and 30, respectively, which are as follows:

Instruction 20. "If you find that the plaintiff, knowing the manner in which defendant was conducting the blasting operations, acquiesced in or made no objections to same, you may consider such circumstance as bearing upon the question of defendant's negligence and upon the question of any contributory negligence of the plaintiff."

Instruction 23. "If you find that any act of the plaintiff or any omission to act, when it should have acted, resulted in the natural consequence of throwing the defendant off its guard as to any necessity to exercise a high degree of care toward plaintiff, the defendant's failure to exercise a high degree of care towards plaintiff's property on that account cannot be regarded as negligence."

Instruction 30. "On the question of contributory negligence you may consider whether or not the plaintiff knew that its property would necessarily be damaged, and knowing that, refrained from temporarily moving its line from danger or did anything that it reasonably could have done to protect its own property."

The testimony which defendant claims justified the last named instructions as to contributory negligence was, first, as to the agreement between the parties' respective representatives as to the employment by the defendant of a lineman to avoid long interruptions of telephone service, as more particularly set forth in the statement of facts herein, and, second, as to the failure, except as above set forth, on the part of the plaintiff to move its line out of defendant's way. Defendant has failed to furnish a single citation of authority wherein it has been held that either of the above combinations of facts or of like facts constitutes contributory negligence, and we, upon research, have been unable to find such an authority. Upon principle the defendant ought not to be relieved from liability for injury caused by its negligence, if there was such negligence, either by mutual attempt of the parties to minimize its consequences or by the failure of the plaintiff to make arrangements for a line elsewhere. The plaintiff, subject to the rights of the government, the public and the contractor, was entitled to maintain its line where permitted by its franchise and at the same time to expect from the contractor the exercise of due care and diligence in the premises. We find no error in the refusal of defendant's requested instructions 21, 23 and 30.

5. Upon defendant's fifth point, raised by exceptions 7, 8, 9 and 24, that the element of punitive damages should not have been submitted to the jury, we are not in agreement, the majority believing that the trial court erred in giving plaintiff's requested instructions 15, 16 and 17 submitting the question of punitive damages to the jury and in refusing to give defendant's requested instruction 28 withdrawing that question from the jury; and the minority (the writer of this opinion) believing that no error was thereby committed.

6. Defendant's sixth point, namely, "Plaintiff was not entitled to have submitted to the jury its claim of damage for loss of tolls," is raised by exception 6 to the giving of plaintiff's requested instruction numbered 14 and by exception 21 to the court's refusal to give defendant's requested instruction numbered 25. Instruction 14, given at plaintiff's request, was as follows: "You are instructed that if you find a verdict for the plaintiff you are entitled to take into consideration any evidence which has been submitted tending to show that the defendant's acts destroyed plaintiff's lines, poles and cross-arms, and as a direct result therefrom the defendant has lost revenue from its patrons in the ordinary tolls to which it would have been entitled if service had been uninterrupted, and if you find that the plaintiff is entitled to a verdict and to compensation for loss of such tolls, you may award the plaintiff by your verdict such amount as you shall find from the evidence to have been its loss in such tolls." Instruction 25, requested by defendant and which the court refused to give, was as follows: "You are instructed that if you find from all of the evidence in this case that the plaintiff is entitled to recover you cannot consider as an element of its damage its claim for loss of tolls as presented by the evidence in this case."

The only evidence offered by the plaintiff upon this subject was in the testimony of its manager, Mr. Branch. Mr. Branch testified that the average toll service receipts for the year 1927 were about $65 per month less than the receipts of 1926 and less than the receipts of 1928. There was also testimony that there were frequent service interruptions during the period of blasting. No other sufficient evidence was offered to connect the two events or to show that the one was caused by the other. There was testimony showing that blasting operations began about November 1, 1926, and ended in August, 1927. The evi-

dence contains comparative statements of toll receipts for the years 1926 and 1927, but no statement of receipts for 1928. Omitting fractions of a dollar from the monthly receipts, the total tolls for 1926 were $35,229 and for 1927 they were $34,437, or $792 less than in 1926. But the 1926 column contains items of tolls in two months, namely, November and December, when blasting was in operation, offset by lesser amounts in the 1927 column; and both columns contain items of the tolls of September and October when there was no blasting in either year. Omitting the two months when there was no blasting and transposing the November and December items so that the receipts during the ten months of blasting are offset against the receipts in the ten months when there was no blasting, we have receipts amounting to $28,854 in the months of blasting as against $29,303 in the months when there was no blasting—a difference of $449 in favor of the latter period. A difference of more than the last named amount, to-wit, a difference of $614, occurred in one month only. In April, 1926, the receipts from tolls amounted to $3,332, while in April, 1927, they amounted to $2718. The difference is not traced to blasting operations and might well have been caused by excessive use, as appears to have been the case, of the telephone in the month of April, 1926, due to the Kona lava flow of that month and not to a subnormal use of it in 1927. In no other month of the entire schedule does the aggregate of tolls approach $3,332. Omitting the April items from both columns of the schedule, we find that the tolls for the remaining nine months while blasting was in operation aggregate $26,136, while the total tolls of the corresponding months in 1926 and 1927 when there was no blasting amounted to $25,971—a difference of $165 in favor of the first named group.

There was no evidence of loss of tolls due to blasting to be submitted to the jury and therefore the trial court

erred in giving plaintiff's requested instruction number 14 and in refusing defendant's request number 25.

7. Defendant's seventh point, that the plaintiff's claim for overhead should not have been submitted to the jury, is raised by exception 22 to the refusal of defendant's requested instruction 26 which was offered in the following form: "You are instructed that if you find from all of the evidence in this case that the plaintiff is entitled to recover, you cannot consider its claim of 10% overhead charges amounting to $          ." Plaintiff's exhibit "N" contains a charge by the plaintiff against the defendant in the sum of $307.74, ten per cent overhead. Mr. Branch's testimony shows that the items taken into account in the foregoing computation are office expenses, supervision, salaries, rent, lights, water, taxes, insurance, printing, stationery, reserve funds for pensions, etc. Mr. Branch further testified that the foregoing items cost the telephone company no more and no less because of the defendant's injury to its lines. In these circumstances the defendant was entitled to have withdrawn from the jury's consideration upon the question of compensatory damages the above named item of $307.74 and the trial court erred in refusing defendant's requested instruction 26.

Exception 23 was expressly abandoned by the defendant and exception 27 was not argued.

For the reasons above set forth exceptions 16, 26, 3, 4, 5, 10, 12, 13, 14, 17, 2, 18, 20 and 25 are overruled and exceptions 1, 15, 19, 11, 6, 21 and 22 are unanimously sustained. Exceptions 7, 8, 9 and 24 are sustained by majority opinion.

The verdict is set aside and a new trial is granted.

*C. S. Carlsmith* and *C. W. Carlsmith* (also on the brief) for plaintiff.

*J. W. Russell* (also on the briefs) for defendant.