WILLIAM E. BECKSTROM AND WILHELMINA MARGARET BECKSTROM *v.* HAWAIIAN DREDGING COMPANY, LIMITED, A HAWAIIAN CORPORATION.

No. 3065.

ARGUED MARCH 4, 1958.　　　DECIDED MARCH 24, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an action to recover damages to plaintiffs' dwelling alleged to have been caused by the blasting activities of the defendant corporation. Plaintiffs' home was located in the Aina Haina subdivision in Honolulu; during the period covered by the complaint, namely, between October 3, 1949 and March 15, 1950, the defendant corporation was setting off high explosives in conjunction with a street extension project. The plaintiffs claimed as a result of the explosions their newly built home was severely

damaged by the cracking of the concrete floor, the falling away of the grouting material from glass blocks, the separation of the moulding from the canec ceiling, and damage to the paint and woodwork. It was claimed also that explosions caused damage to other homes in the area, and on one occasion following a blast a rock damaged a roof of one who lived in the vicinity. It was not claimed that any rock or debris was cast on plaintiffs' land but the damage was due to concussion caused by the defendant corporation's blasting operations. Trial was had before a jury which found for defendant. Appeal to this court followed.

The only question before this court is the refusal of the trial judge to give an instruction to the jury requested by the plaintiffs and the giving of certain instructions requested by the defendant over plaintiffs' objections.

Plaintiffs' requested instruction which was refused was, in substance, that if the jury believed the defendant while engaged in the contracting business in the vicinity of plaintiffs' property shot off numerous blasts of high explosives which damaged plaintiffs' house, the jury should allow plaintiffs such damages as were directly caused by such blasts.

The court granted defendant's requested instruction number four which, in substance, was that the jury must return a verdict for the defendant unless it found that the *defendant was negligent* in conducting its blasting operations and such negligent blasting was the proximate cause of damage to plaintiffs' property. The court also instructed the jury, in substance, as to what constituted negligence and that the question before the jury was *"not whether the defendant caused the damage to plaintiffs' house"* but whether *"defendant failed to exercise reasonable care"* and as a result of such negligence there was damage to plaintiffs' house. (Emphasis added.)

These instructions squarely raise the question of whether the doctrine of strict liability set forth in *Rylands* v. *Fletcher*, 3 H. L. 330, is or should be the law in this Territory. As applied to explosives, this doctrine holds that one who damages a neighbor's property by blasting is liable, irrespective of negligence on the part of the actor.

The so-called strict liability for actions of an individual began about the close of the nineteenth century with the case of *Rylands* v. *Fletcher*. Until then "the progress of the law was in the direction of limiting liability in tort to 'fault,' in the sense of a wrongful intent or a departure from a community standard of conduct. Modern law is developing a policy of imposing liability without regard to 'fault,' particularly in cases where the defendant's activity is an unusual one involving abnormal danger to others, even though it is carried on with all possible precautions." (Prosser, *Law of Torts*, 2d ed., c. 11, § 56, p. 315.)

As stated by Prosser, there is "\* \* \* a general acceptance of the principle that in some cases the defendant may be liable, although he is not only charged with no moral wrongdoing, but has not even departed in any way from a reasonable standard of intent or care." (*Law of Torts*, c. 11, § 56, p. 317.)

Harper & James, *The Law of Torts*, in discussing *Rylands* v. *Fletcher*, quotes Stallybrass in an article that:

" 'The principle of law behind all these cases is, it is submitted, that if a man takes a risk, which he ought not to take without also taking upon his shoulders the consequence of that risk, he shall pay for any damage that ensues.' This appears to be altogether sound." (2 Harper & James, *The Law of Torts, Liability Without Fault*, § 14.4, p. 801.)

American Law Institute, *Restatement, Torts* (*Ultrahazardous Activities*, c. 21, § 519, p. 41), states:

"* * * one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

(When we speak of the imposition of absolute liability without regard to fault, the reference is of course to injuries or damages resulting from the ultrahazardous nature of the explosive and not from some other cause. For example, if a truck carrying explosives injures one by running over him and not as the result of an explosion of the dangerous cargo, liability would depend upon proof of negligence in the operation of the truck.)

This policy frequently has found expression where the defendant's activity is unusual in the community and the danger which it threatens to others is unusually great and will be great even though the enterprise is conducted with every possible precaution. (Prosser, *Law of Torts*, § 56, p. 317.) The courts hold that defendant's enterprise, while it should be tolerated by the law, must pay its way.

As to the general acceptance of the doctrine of *Rylands* v. *Fletcher* as applied to explosives, Prosser (*Law of Torts,* 2d ed., c. 11, *Strict Liability,* § 59, p. 336), states:

"The courts are unanimous in holding that blasting, which is certainly the typical activity of this kind, results in strict liability without proof of negligence when rocks are thrown upon the plaintiff's land, so that a 'trespass' may be found, or where they strike his person. Where the damage is the result merely of concussion or vibration, some seven or eight courts continue to adhere to the ancient distinction between trespass and case, and regard the injury as an 'indirect' one, for which there can be no recovery except on the

basis of negligence. This distinction, which has often been denounced as a marriage of procedural technicality with scientific ignorance, is rejected by the great majority of the courts, which hold the defendant strictly liable for concussion damage."

It is unnecessary to cite the very numerous cases supporting the general principle of *Rylands* v. *Fletcher,* as some of them will be mentioned hereinafter on the specific point before us of the damage by ground vibrations.

The defendant makes three contentions: (1) that the Supreme Court of Hawaii has already indicated in *Mutual Telephone Co.* v. *Hawaiian Contracting Co., Ltd.,* 31 Haw. 296, that the law of this jurisdiction is that negligence is required before a liability is created for damages caused by blasting; (2) that the rule of absolute liability is not applicable to a case involving damages alleged to have been caused by ground and air vibrations under the reasons advanced for applying that rule to extrahazardous activities; (3) that the better reasoning and the logical position support the rule requiring negligence to be shown where blasting damage due to vibrations is alleged.

The *Mutual Telephone Company* case does not in any way indicate the law of this jurisdiction is that negligence is a necessary element of liability in blasting damage cases as to damage on someone else's property, but quite the contrary. In that case the telephone company occupied the highway with its wires, etc., under a franchise from the Territory. The contracting company was reconstructing the highway under contract with the Territory. Telephone lines were damaged during the course of the work by the contracting company. This company did not invade any land privately held by the telephone company nor were any telephone lines damaged on land so held by the company. Further, the telephone company and the contracting company entered into an agreement whereby the contract-

ing company maintained and paid the wages for a lineman who remained at the site of the blasting and did on-the-spot repairing of damaged lines. The court quoted from 25 Corpus Juris 195 as follows:

"Thus, 'as to persons upon his premises and rightfully so, the person using explosives in blasting in a lawful and proper manner is liable only in case of negligence and need exercise only ordinary care. *The rule that one who by blasting throws rock and material upon the adjacent land of his neighbor is liable for the damage resulting from such act without regard to the question of negligence, has no application where the person blasting has the right to the use of the land upon which the blasted material is thrown.'* " (Emphasis added.)

The second point argued, that the rule of absolute liability is not applicable to a case involving damages alleged to have been caused by ground and air vibrations, as stated *supra,* has some support among the authorities, but the overwhelming authority and sound reasoning are to the contrary. In the note in 20 American Law Reports, Annotated, 2d series, beginning at page 1372, on page 1375 appears the following:

"In some of the cases adopting the latter view * * * a distinction has been made based on the form of the action. If rocks and debris were thrown upon the plaintiff's land, a trespass results for which there is liability, irrespective of negligence, but if the damage was by concussion, there is no trespass, and the liability for such consequential damages must be based on negligence in an action on the case. This distinction, based on the historical difference between actions of trespass and case, has been severely criticized by many cases adopting the view of absolute liability in concussion cases. Likewise criticized by some cases has been the

reasoning that there was no physical invasion when the damage was by concussion." [Citing cases from California, Connecticut, Illinois, Iowa, Missouri, Montana, Nebraska, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Washington, West Virginia and Wisconsin.]

Continuing on page 1377, it is stated:

"Holding that dynamite was of the class of elements which one who stored or used such in a locality or under circumstances such as to cause likelihood of risk to others, stored or used it at his peril, and was absolutely liable as an insurer, if damage resulted to third persons, either from the direct impact of rocks thrown out by the explosion (which would be a common-law trespass) or from concussion, the court in Exner v. Sherman Power Constr. Co. (1931, CA2d Vt) 54 F2d 510, 80 ALR 686, said: 'It is true that some courts have distinguished between liability for a common-law trespass, occasioned by blasting, which projects rocks or debris upon the property or the person of the plaintiff, and liability for so-called consequential damages arising from concussion, and have denied liability for the latter where the blasting itself was conducted at a lawful time and place and with due care. . . . Yet in every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people. In each case, a force is applied by means of an element likely to do serious damage if it explodes. The distinction is based on historical differences between the actions of trespass and case and, in our opinion, is without logical basis.' For similar statements, see Britton v. Harrison Constr. Co. (1948, DC W Va) 87 F Supp 405, and Brown v. L. S. Lunder Constr. Co. (1942) 240 Wis. 122, 2 NW 2d 859.

"Likewise, in Wendt v. Yant Constr. Co. (1933) 125 Neb. 277, 249 NW 599, where the plaintiff claimed protection under the rule that one who uses high explosives in excavating so near the property of another that the natural and probable result of an explosion will be injury to such property, will be liable for injuries caused, even by vibration and concussion of air, however high degree of care he may have exercised in their use, the court, after pointing out that absolute liability without regard to fault seemed to be generally imposed by the courts wherever there had been an actual invasion of property by rocks or debris from blasting, said: 'Some courts distinguish between liability for a common-law trespass occasioned by blasting which projects rocks or debris upon the property of another, and liability for damages arising from concussion, and deny liability for the latter where the blasting itself was conducted at a lawful time and place with due care. . . . This distinction is based on the historical differences between the common-law actions of trespass and case. There is no practical difference between liability occasioned by blasting which projects rocks on another's property, or by creating a sudden vacuum and resultant concussion. "The imposition of absolute liability" for one's acts without regard to fault "is not out of accord with any general principles of law," the under-lying rule being that if damage is inflicted there ordinarily is liability, in the absence of excuse. . . . *The weight of authority sustains the position that there is no distinction in liability for damage to property from blasting which projects rocks or by concussion.* . . . We find that appellee had a right to be protected against the particular hazard of concussion and vibration, supported by the rule of law that one who uses dynamite in blasting, so as to cause likelihood of

risk to property, is liable, if damage to the property results, whether from direct impact of rock thrown out by the explosion or from concussion.' " (20 A. L. R. [2d] 1377-1378.) (Emphasis added.)

See also Prosser, *Law of Torts*, chapter 11, section 59, page 336, *supra*.

The defendant argues that jurisdictions which have adopted the rule of absolute liability did not have the benefit of scientific knowledge now available concerning ground vibrations from blasting; that, therefore, certain basic assumptions relied upon by such courts are now known to be fallacious. It contends the statement that blasting is extrahazardous because "it is impossible to predict the results of explosions" (*Restatement, Torts*) is no longer true as the advance of the science of seismology has made the results of explosions predictable; and, being predictable, the defendant is liable only in case he is negligent in conducting his activities.

It also contends that the judge must decide what occupations are extrahazardous and that the court could not disregard the scientific evidence, particularly the testimony and experiments of Dr. Leet, on the subject of explosions.

Dr. L. Don Leet of Harvard University testified that he was of the opinion that the damage to plaintiffs' house did not result from the blasting and that the amount of explosives used by defendant's powdermen were reasonable amounts under the circumstances. He testified that he had conducted an experiment duplicating the largest explosion set off by defendant during the time in question; that this experiment was conducted at the same location, using the same amount of explosives which were placed in substantially the same manner, and he concluded that the vibration or ground waves set off by the experimental blast could not cause any damage to a dwelling located where the plaintiffs' home was located, and that the vibrations could

not be felt at that distance; that the stamping of a foot on the sidewalk in front of plaintiffs' home produced ten times greater vibrations than the experimental test shown on the Leet's seismograph.

Whether or not such damage as plaintiffs complained of was or could be caused by explosions set off by defendant is a question of fact. While expert testimony may be useful and very persuasive, this question of fact must be submitted to the jury. Neither the judge nor the jury is bound to accept the testimony of an expert in this matter.

*Buckner* v. *Knutson-Gould Construction Co.*, 305 S. W. (2d) 709 (Mo.), held that whether blasting caused seismic waves to travel through rock strata underlying the soil upon which foundations of buildings rested so as to cause a settling of foundations and breakage was for the jury.

"It has been said to be the general rule that what is the proximate cause of an injury is ordinarily a question for the jury; * * * It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." (38 Am. Jur., *Negligence*, § 351, pp. 1056-1057.)

In a case where this same expert testified, *Pate* v. *Western Geophysical Co. of America*, 91 So. (2d) 431, the court in sustaining a verdict for plaintiff, said:

"The defense is based almost exclusively upon expert testimony given by one Dr. Louis Don Leet, no doubt an outstanding authority with respect to seismic operations and phenomena, who was most positive in this opinion that plaintiffs' damages did not result from defendant's operations. From his study of the location of the various shots complained of and from his mathematical calculations and computations, he stated there could not have been enough force from any of them to have damaged either of those structures, referring to plaintiffs' buildings, or the wells."

In another case, *Engel* v. *Dunn County,* 77 N. W. (2d) 408, an engineer, who was a specialist in seismology, testified that he had set up his instruments in the house of plaintiff and set off blasts in the quarry, using dynamite charges of the same size of those used at the time the plaintiff claimed he had sustained damage, and that such blast could not result in the damage claimed by plaintiff. The court said:

"This expert's qualifications were impressive and his testimony was lengthy and extremely technical. From these tests he concluded and testified that the earth waves caused by the blasts were insufficient to produce the damages complained of."

However, the judgment against the defendant was sustained.

The court, in its decision in *Pate* v. *Western Geophysical Co. of America, supra,* discussed a number of cases, including that of *Redmond* v. *Ouachita Coca-Cola Bottling Co., Inc.,* 76 So. (2d) 553, 557, quoting therefrom as follows:

"* * * our appellate courts have, in effect, declared so many times as to obviate the necessity of citation that 'It couldn't happen, but it did.' "

In the case before us the testimony shows that a rock was thrown on a neighbor's roof; either the defendant did not always use the amount constituting a "safe" charge or the charge was not in fact as safe as the witnesses assumed.

Vibratory effects of explosions on other buildings in the neighborhood are admissible to show the character and extent of the explosions. (*Harbison-Walker Refractories* v. *Scott,* 185 Ala. 641, 64 So. 547; note, 45 A. L. R. [2d] 1121.)

Under one of the defendant's contentions — not so much in its brief as in the oral argument — the court, in sub-

stance, would have to take judicial notice that the modern scientific knowledge of the effect of explosives has made them without any great danger. In other words, the "wild animal" has been domesticated. Therefore, absolute liability no longer arises.

In discussing this contention, the court in *Opal* v. *Material Service Corporation,* 9 Ill. App. (2d) 433, 133 N. E. (2d) 733, 747, stated:

"Defendant here nowhere disputes the rule in Illinois, as enunciated in Fitz Simons & Connell Co. v. Braun and other cases in this state, supporting that doctrine which holds the entrepreneur to liability for damage resulting from blasting whether occurring through trespass or concussion, but it seeks to minimize the effect of these decisions by suggesting 'the trend of the courts today [is] to hold that there is no basis for adopting the harsh rule of absolute liability against an industry that in its strict adherence to modern scientific methods has made the handling and use of explosives less dangerous than almost any product of any nature whatsoever'; and it relies on a case decided in Virginia which has adopted the minority rule. We are satisfied, however, that the doctrine enunciated in the Fitz Simons case, followed in Baker v. S. A. Healy Co., and even earlier stated in the Harwood case, represents the logical approach to the problem and is in accord with the majority rule."

That portion of defendant's instruction that the question before the jury was not whether the defendant caused the damage to plaintiffs' house but whether defendant failed to exercise reasonable care resulting in damage to plaintiffs' house was erroneous. It was not necessary for the plaintiffs to prove negligence on the part of the defendant, but merely that the defendant's blasting with high explosives was the proximate cause of the damage

to plaintiffs' house. This question must be submitted to the jury.

Reversed and remanded for a new trial.

*Howard K. Hoddick* (*Allen R. Hawkins* with him on opening brief; *Robert Won Bai Chang* with them on reply brief) for appellants.

*Martin Anderson* (*Anderson, Wrenn & Jenks* on the briefs) for appellee.

### DISSENTING OPINION OF RICE, C. J.

I respectfully dissent.

I concede the correctness of the majority's view as to the nonapplicability of *Mutual Telephone Company* v. *Hawaiian Contracting Company, Limited,* 31 Haw. 296, to the instant case and that the question whether the defendant's blasting was the proximate cause of damage to the plaintiffs' house should be submitted to the jury. However, I disagree with the majority in respect to the adoption in this Territory of the rule of absolute liability of a user of dynamite, regardless of the extent of care in the use thereof and I would modify the rule to relieve the user of dynamite of liability in the event the jury should find that the use of dynamite was with such extreme care, in a situation and under circumstances that resultant damage would not reasonably be foreseeable and expected. A jury could be instructed accordingly.

To advert to the majority opinion, the "wild animal" has, indeed, been domesticated. Like the elephant of the East, once wild, but which by domestication has become the useful servant of man, dynamite, properly handled is no longer "wild," because its potentiality has become known and results of its use reasonably predictable through collection and study of data, the application of scientific knowledge thereto and establishment of recognized tables therefrom and measurement, by scientific instruments, of

the concussions and vibrations, etc., resulting from blasting with a given quantity, or varying quantities, of dynamite.

The majority opinion uses the term "high explosives." In the instant case the evidence relates only to the use of dynamite by the defendant. Granting that to be a "high explosive" it is one in common use and, as said *supra,* the potentiality of which is now known and the results of its use reasonably predictable.

See: *Booth* v. *Rome, W. & O. Terminal R. Co.,* 140 N. Y. 267, 24 L. R. A. 105, 37 Am. St. Rep. 552; *Benton Gravel Co.* v. *Wright,* 206 Ark. 930, 175 S. W. (2d) 208; *Albison* v. *Robbins & White, Inc.,* 151 Me. 114, 116 A. (2d) 608; *Foster* v. *Preston Mill Co.,* 268 P. (2d) 645, 44 Wash. (2d) 440; 22 Am. Jur., *Explosion and Explosives,* §§ 46, 47, and 48, pp. 175-176; and §54, pp. 180-182 and citations in note 19 thereto; also, Harper and James, *The Law of Torts,* vol. 2, pp. 815-819.