TETSUJI KAJIYA and JEANNE KAJIYA, husband and wife, Plaintiffs-Appellants, *v.* DEPARTMENT OF WATER SUPPLY, an independent administrative department of the County of Maui, State of Hawaii, and SHIGETO MURAYAMA, Defendants-Appellees

NO. 6844

CIVIL NO. 2901

JUNE 5, 1981

HAYASHI, C.J., BURNS, J., AND CIRCUIT
JUDGE SHINTAKU IN PLACE OF
ASSOCIATE JUDGE PADGETT, RECUSED

OPINION OF THE COURT BY BURNS, J.

This is an appeal from the trial court's order granting defendants-appellees' motion for summary judgment. Plaintiffs-Appellants (hereinafter plaintiffs or the Kajiyas) argue that the issues of material fact presented below were sufficient to preclude the summary judgment. We agree.

Three questions are presented to us for determination: (1)

Whether plaintiffs' failure to include the Board of Water Supply as a defendant is a fatal jurisdictional defect; (2) Whether the defendants owed a duty to the plaintiffs and if so, what the duty was and whether it was breached; and (3) Whether there exists a genuine issue as to any material fact with regard to Defendant Murayama's alleged malice.

The Kajiyas, husband and wife, reside in Kula, Maui. Since 1957 they had raised and maintained as pets in a fishpond on their property Japanese carp (*koi*), ornamental fish. In 1975 they owned fifty-two *koi* with an alleged total value of $4,800.

Early in the morning of May 19, 1975, the Kajiyas discovered all their *koi* floating on the pond, dead or dying. Efforts to revive the fish were futile; all soon expired. The Kajiyas allege that the deaths were caused by the defendants' adding or causing to be added to the Kula water system an amount of chlorine toxic to *koi*. They further state that they were given no notice of the increased chlorination.

Mr. Murayama, Director of the Department of Water Supply, acknowledged that a "chlorination procedure" had been implemented by the Board of Water Supply as a health measure in response to the unacceptable coliform bacteria count in the Kula water system.

On the afternoon of May 19, Mr. Kajiya spoke with Mr. Murayama about his dead fish. Mr. Kajiya states that Mr. Murayama told him he could "dump," or destroy, his fish and that in reliance on this suggestion he did so, making subsequent chemical analysis impossible.

Mr. Murayama, on the other hand, avers that when he spoke with Mr. Kajiya, he advised him to freeze his fish for possible future analysis, and that in giving this advice, he acted in good faith.

On December 5, 1975, plaintiffs brought suit against Defendants County of Maui and Shigeto Murayama[1] for negligently causing the death of the *koi*, and against Murayama alone, apparently for malicious use of discretion, claiming special, general, and punitive damages. On January 10, 1977, plaintiffs amended their complaint and captioned as defendants the Department of Water Supply, an independent administrative department of the County of Maui, and Shigeto Murayama.[2]

---

[1] [2] Although Mr. Murayama was sued without description, it appears from the

On September 23, 1977, the defendants moved for summary judgment. No discovery had been done by either side. For purposes of the summary judgment motion, the record consisted of Shigeto Murayama's affidavit and Mr. Kajiya's affidavit. The court granted the motion for summary judgment.

Initially, defendants argue that the trial court lacked *in personam* and subject matter jurisdiction over the case because plaintiffs failed to bring suit against the proper party.

Hawaii Revised Statutes § 54-31 (1976) states in part:

The board of water supply created herein shall be known as the board of water supply of the county in which it is created, and may sue or be sued under this name. . . . Any action commenced or prosecuted for recovery of damages for any injury to any person or property by reason of the negligence of the board or any of its agents, servants, or employees, shall be commenced and prosecuted against the board.

The Kajiyas originally sued the County of Maui and Shigeto Murayama. Later they amended their complaint and sued the Department of Water Supply and Shigeto Murayama. The Board of Water Supply was never captioned as a defendant.

While it is true that a defendant should be served by his true name if it is known or can be ascertained, a mere misnomer of a party defendant in pleadings and process, if it does not render the summons insufficient for the purpose of giving notice to the proper defendant, must be taken advantage of by a plea in abatement (or otherwise affirmatively pleaded); failure to take objection in this manner ordinarily is a waiver of the defect. 59 AM. JUR. 2d *Parties* § 257 at 719 (1971); *City of Columbus v. Myszka*, 272 S.E.2d 302, 306 (Ga. 1980); *Hiner v. State*, 292 N.W.2d 709, 712 (Mich. App. 1980); *B. & P. Railroad v. Fifth Baptist Church*, 137 U.S. 568, 572 (1891).

In the present case, plaintiffs' intentions are clear: They meant to sue the agency which employed Defendant Murayama and which was ultimately responsible for chlorinating Kula's water supply. Defendants' attorney acknowledged at oral argument that the Board of Water Supply did receive the pleadings and process in the case. Further, defendants answered both the original and amended

---

complaint that plaintiffs intended to sue him as an individual and in his representa-tive capacity as Director of the Department of Water Supply.

complaints without raising the issue of the misnomer. Therefore, and particularly in view of the fact that there has been no showing that the Board of Water Supply has been prejudiced by the misnaming, we decline to be "overly technical"[3] and find that plaintiffs' failure expressly to name and serve the Board of Water Supply does not constitute a fatal defect.

The remaining questions address the issue of the summary judgment. Summary judgment is appropriate only when no genuine issues of material fact are presented and the case can be decided solely as a matter of law. Hawaii Rules of Civil Procedure, Rule 56 (1954, as amended).

This rule must be strictly interpreted:

A judge ruling on a motion for summary judgment cannot summarily try the facts; his role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. This is true even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper. [Citations omitted.]

10 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 2725 (1973).

The Board of Water Supply contends that it has only a duty to provide potable water for humans and that it has no duty under any circumstances to provide water suitable for a human's pet fish. While we agree that the Board of Water Supply's duty to humans is primary, we hold that it has a secondary duty to a human's property, which may include his pet fish.

We define the Board of Water Supply's duty by referring to the law of negligence as it relates to dangerous agencies and instrumentalities.[4]

Liability for negligence in respect of dangerous instrumen-

---

[3] *See Cane City Builders v. City Bank,* 50 Haw. 472, 443 P.2d 145 (1968).

[4] We decline to impose the strict liability imposed on the use of "high explosives" in *Beckstrom v. Hawaiian Dredg. Co., Ltd.,* 42 Haw. 353 (1958).

talities, as liability for negligence generally, arises from the failure to use due care, and the general rules and principles governing the standard and degree of care which a person is required to exercise to avoid harming another and, in particular, the rule that the care exercised must be in proportion to the danger, are applied where an injury is caused by a dangerous instrumentality or agency. [Footnotes omitted.]

57 AM. JUR. 2d *Negligence* § 108 (1971).

Although it is not possible to formulate an all-inclusive list of dangerous agencies, an inherently dangerous substance has been defined as "one burdened with a latent danger or dangers which derives from the very nature of the substance itself." *Hobart v. Sohio Petroleum*, 255 F.Supp. 972, 975, *aff'd* 376 F.2d 1011 (D.C. Miss. 1966).

Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous. 65 C.J.S. *Negligence* § 100(2)(b) (1966). Chlorine, a toxic gas used among other things as a disinfecting agent in water purification and in insecticides and herbicides, Webster's Third New International Dictionary (1967), falls within this category.

It is axiomatic that a person who controls an instrumentality that he knows or should know to be dangerous has, if the danger is not obvious and apparent, a duty to give warning of the danger.[5] "The duty to warn against unusual hazards has long been recognized as a source of tort liability." *Sams v. Englewood Ready-Mix Corp.*, 22 Ohio App. 2d 168, 259 N.E.2d 507, 509 (1969).

Although this is an issue of first impression in Hawaii, it can be analogized to the situation presented in *Farrior v. Payton*, 57 Haw. 620, 562 P.2d 779 (1977). In that case, plaintiffs brought suit for injuries sustained by them in an attempt to avoid what they believed to be an imminent attack by defendants' dog. The Hawaii Supreme

---

[5] You are hereby instructed that where a person is performing an act or engaging in an operation that is likely to be dangerous to property or to persons exercising ordinary care in the vicinity of the place where the operation is being carried on, it is the duty of such person to warn of the danger; the notice or warning that is required in such cases is that which a person of ordinary care and prudence would give under like or similar circumstances. It must be adequate to apprise the person notified of the danger.

18 AM. JUR. PL. & PR. FORMS (Rev.) *Negligence* Form 157 (1972).

Court quoted with approval the rule stated in Restatement, Second, Torts § 338 (1965):

> A possessor of land who is in immediate control of a force, and knows or has reason to know of the presence of trespassers in dangerous proximity to it, is subject to liability for physical harm thereby caused to them by his failure to exercise reasonable care.
>
> (a) so to control the force as to prevent it from doing harm to them, or
>
> (b) *to give a warning which is reasonably adequate to enable them to protect themselves.* [Emphasis added.]

57 Haw. at 629, 562 P.2d at 781 (1977).

Adapting the dangerous force rule to dangerous agencies, we frame the duty to be this: When one is in control of what he knows or should know is a dangerous agency, which creates a forseeable peril to persons or property that is not readily apparent to those endangered, to the extent that it is reasonably possible, one owes a duty to warn them of such potential danger.

Applying this duty to the alleged facts of the instant case, it is apparent from the record that the questions raised — was a peril to plaintiffs' *koi* created by the added chlorine? was it a forseeable peril (as to the facts that users were keeping *koi* in water supplied by the county, and that the *koi* were endangered by the added chlorine)? was notice of the peril reasonably possible? was notice given? was it reasonably adequate notice? — could not be decided on the record in this case.

The final issue is, whether both defendants can be held liable for Defendant Murayama's alleged malice?

It is well-settled in this jurisdiction that nonjudicial government officials do not have absolute immunity from tort suit arising out of the performance of their public functions. The Hawaii Supreme Court stated in *Medeiros v. Kondo,* 55 Haw. 499, 503, 522 P.2d 1269, 1271 (1974), "We feel strongly that if an official, in exercising his authority is motivated by malice, and not by an otherwise proper purpose, then he should not escape liability for the injuries he causes." However, the court strikes a balance between the interests of the maliciously injured party and the interests of the good faith official acting for a proper purpose by establishing a higher standard of proof (clear and convincing) than is ordinarily required in a tort case. *Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125 (1974).

Unless the issue is removed from the case by uncontested affidavits and depositions, the existence or absence of malice is a question for the jury. *Id; Goldwater v. Ginzburg,* 261 F. Supp. 784 (D.N.Y. 1966).

Moreover, in this case, it must first be decided whether Mr. Murayama was acting in his capacity as an individual or as a public officer, as plaintiffs allege.

If it is determined that Mr. Murayama was acting in his capacity as an individual, then he is liable only if he committed a tort[6] against plaintiffs.

If it is determined that Mr. Murayama was acting within the scope of his employment as a public official, then he can be held liable for general, special, and punitive damages (1) if he maliciously exercised his official discretion, *Lane v. Yamamoto,* 2 Haw. App. 176, 628 P.2d 634 (1981), or (2) if he maliciously committed a tort[7] against plaintiffs, *Runnels v. Okamoto, supra.*

Further, it appears that plaintiffs will not have grounds for recovering general and special damages from Mr. Murayama unless they lose their suit against the Board of Water Supply because of inability to prove the cause of the *koi's* death. If plaintiffs win their suit against the Board of Water Supply for breach of duty, then it is not likely that they have suffered actual damages from Mr. Murayama's alleged malicious advice, and they will then be left with a claim against him for punitive damages only.

Many issues in this case could not have been determined as a matter of law from the meager record. Therefore, summary judgment was inappropriate.

Reversed and remanded for further proceedings consistent with this opinion.

*Ralph E. Corey* for plaintiffs-appellants.

*James B. Takayesu,* Deputy Corporation Counsel, *(Roy Y. Yempuku* on the brief) for defendants-appellees.

---

[6] [7] In their complaint, plaintiffs have failed to articulate any underlying cause of action in tort against Mr. Murayama with regard to his alleged advice to "dump" the fish.