**ERBRICH PRODUCTS CO., INC.,**
**Defendant-Appellant,**

v.

**Marjorie WILLS, et al.,**
**Plaintiffs-Appellees.**

**ERBRICH PRODUCTS CO., INC.,**
**Defendant-Appellant,**

v.

**Willa Mae GREEN, et al.,**
**Plaintiffs-Appellees.**

**No. 30A01–8608–CV–219.**

Court of Appeals of Indiana,
First District.

June 29, 1987.

Rehearing Denied Aug. 17, 1987.

Peter G. Tamulonis, Donald L. Dawson, John B. Drummy, Donald G. Orzeske, Kightlinger & Gray, Indianapolis, for defendant-appellant.

Vernon J. Petri, Charles E. Russell, Vernon J. Petri, P.C., Thomas R. Ruge, Ruge & Ruppert, Thomas C. Doehrman, Indianapolis, George B. Davis, Davis & Davis, Greenfield, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Erbrich Products Company, Inc. brings this interlocutory appeal from two cases which have been consolidated for our review by order of this court on December 2, 1986. We affirm in part and reverse in part.

## FACTS

Erbrich Products Co., Inc., operates a small manufacturing plant on the near northeast side of Indianapolis. Erbrich has operated from the same location since about 1922. Throughout this time, Erbrich has maintained substantially the same operating hours, usually between 7:00 a.m. and 5:00 p.m. Erbrich manufactures such products as mustard, vinegar, bluing, ammonia, and liquid bleach.

Erbrich began the manufacture of bleach in 1932. At that time, Erbrich's plant was situated in a light industrial area. Some of the proximate businesses included a cement factory, a concrete curb manufacturer, a brick company, a coal yard, and a lumber yard. These businesses were congregated around a railroad track which serviced the various enterprises. There were no municipal utilities, public sewers, or public transportation for the area. It was not until the late 1930's and early 1940's that the area began to develop as a mixed residential/industrial neighborhood.

Erbrich has used the same basic methods to manufacture bleach since 1932. The process entails the introduction of chlorine gas into a solution of caustic soda and water. Erbrich carefully monitors the use of chlorine gas during the manufacturing process. The flow of gas is controlled by both automatic and manual valves.

At about noon on October 12, 1984, an excessive amount of raw chlorine gas escaped and was released through the plant's ventilation system into the outside air. The incident occurred after the completion of the bleach making process for the day. The cause was unknown. Prior to that date, there had never been such an occurrence.

As a result of the chlorine gas escaping into the atmosphere, many of the nearby neighbors were injured. Some of the alleged physical injuries included eye and nasal passage irritation, nausea, headaches, and vomiting. Also, several plaintiffs apparently were overcome by chlorine fumes. Alleged damages to property included burned out grass and gardens.

On October 22, 1984, ten days after the incident, a number of plaintiffs filed suit under the caption *Wills, et al. v. Erbrich Products Co., Inc., et al.* in the Johnson Circuit Court. The complaint was premised upon theories of negligence, strict liability for an ultra-hazardous activity, nuisance, and battery. The plaintiffs sought $15 million in damages plus injunctive relief. Erbrich filed a motion for partial summary judgment as to the issues of nuisance and ultra-hazardous strict liability. The trial court overruled the motion as to the nuisance issue but sustained it as to strict liability for an ultra-hazardous activity. The trial court then granted the defendant's motion to certify for interlocutory appeal the issue of nuisance.

On October 21, 1985, one year after the incident, eighty-three (83) plaintiffs filed a suit captioned *Green, et al. v. Erbrich Products Co., Inc.* in the Marion Superior Court. Although the record is silent, the case was venued to the Hancock Superior Court. The same theories of liability were asserted as in the *Wills* case along with the additional theory of trespass. The plaintiffs sought $15 million in damages plus injunctive relief. The defendant filed a motion for partial summary judgment on the issues of battery, ultra-hazardous strict liability, and nuisance. The trial court denied the motion in its entirety. Thereafter, the court granted Erbrich's motion to certify for interlocutory appeal the issues of nuisance and strict liability for an ultra-hazardous activity.

On December 2, 1986, our court consolidated the cases for the purpose of this appeal.

## ISSUES

As phrased in the proceedings below, the following issues are presented:

1. Whether the manufacture of chlorine bleach constitutes an ultra-hazardous or abnormally dangerous activity for which strict liability will be imposed.[1]

2. Whether an established industrial operation whose methods and hours of operation have remained substantially the same for the past 50 years can be liable for nuisance damages to residents who have moved to the industrial area, particularly in light of I.C. 34–1–52–1, *et seq.*

## DISCUSSION AND DECISION

*Issue One*

■ Erbrich and the plaintiffs agree that the issue of whether the manufacture of chlorine bleach deserves strict liability is controlled by Restatement (Second) of Torts §§ 519 & 520 (1977). Section 519, which evolved from *Rylands v. Fletcher,*[2] provides as follows:

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

"(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

The First Restatement of Torts § 519 (1938), referred to "ultrahazardous" activity, while the Restatement (Second) speaks of "abnormally dangerous" activity to impose strict liability. This difference in nomenclature is of no importance. W. Prosser and W. Keeton, *Handbook of the Law of Torts* § 78 at 555–56 (5th ed. 1984). Section 520 of the Second Restatement provides as follows:

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) Existence of a high degree of risk of some harm to the person, land or chattels of another;

(b) Likelihood that the harm that results from it will be great;

(c) Inability to eliminate the risk by the exercise of reasonable care;

(d) Extent to which the activity is not a matter of common usage;

(e) Inappropriateness of the activity to the place where it is carried on; and

(f) Extent to which its value to the community is outweighed by its dangerous attributes."

Indiana courts have had occasion to apply section 520. In *Bridges v. Kentucky Stone Co.* (1981), Ind., 425 N.E.2d 125, Kentucky Stone had about forty (40) sticks of dynamite stolen from its storage facility. Three weeks later, about 100 miles from the company's plant, a dynamite explosion occurred at the residence of Charles Bridges. Bridges's twelve year old son was killed in the blast. Dynamite residue matched that of dynamite stored at Kentucky Stone's facility. One William Webb set and ignited the explosives at the residence. Kentucky Stone was named as a defendant based upon its negligent storage of the dynamite and other ultra-hazardous explosives. The trial court granted summary judgment in favor of Kentucky Stone.

Our supreme court upheld the trial court. Justice Hunter, writing for the court, held that "we are persuaded that whether the *storage* of dynamite in any particular circumstance is an 'ultrahazardous activity' must be determined on a case-by-case basis, as per the various factors outlined by the ... Restatement (Second) of Torts § 520 (1977)." *Id.* at 126 (emphasis in original). Although the court did not elaborate on the application of each § 520 factor to the facts, the court held that the storage of dynamite did not warrant strict liability. Justice Hunter opined as follows:

"[T]he consequence of the assumed negligent storage was not contemporaneous damage to the inhabitants and property of the area surrounding the storage

---

1. This issue is presented only by the *Green* proceedings in the Hancock Superior Court.

2. *Fletcher v. Rylands* (1865), 3 H. and C. 774, 159 Eng.Rep. 737, reversed in *Fletcher v. Rylands* (1866), L.R. 1 Ex. 265, affirmed in *Rylands v. Fletcher* (1868), L.R. 3 H.L. 330.

site.... [W]e hold the theft of the explosive materials, the transporting of them from [Kentucky Stone's plant] to Johnson County, the preparation necessary to the discharge, and the eventual trespass and detonation at the Bridges's residence was a superseding cause of the blast precluding liability for any supposed negligence of Kentucky Stone." *Id.* at 127. Since the court's decision was premised upon causation, it was not faced with the direct question of whether the storage of dynamite could be considered an abnormally dangerous activity. The decision proceeded more along the concept of Restatement section 519(2) which, again, states, "This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." In a footnote, the court distinguished between the storage of dynamite and the use of dynamite which was involved in an earlier case. In *Enos Coal Mining Co. v. Schuchart* (1963), 243 Ind. 692, 188 N.E.2d 406, the court concluded that blasting was an "ultrahazardous" activity under Restatement of Torts § 519 (1938). The court held that an action in trespass was proper for falling debris or vibration to the plaintiff's home.

Although Indiana courts have not addressed the question of whether the manufacture of liquid bleach with chlorine gas is an abnormally dangerous activity, they have discussed another gas. Our court has held that a gas company is responsible under ordinary negligence principles for damages resulting from the escape of natural gas. *City of Indianapolis v. Falvey* (1973), 156 Ind.App. 366, 296 N.E.2d 896, *trans. denied; City of Indianapolis v. Walker* (1960), 132 Ind.App. 283, 168 N.E.2d 228, *trans. denied; Westfield Gas Corp. v. Hill* (1960), 131 Ind.App. 558, 169 N.E.2d 726, *trans. denied. Falvey* involved the gas company's failure to respond promptly to a gas leak in the basement of a residence; strict liability was not alleged. Similarly, *Walker* involved negligence, not strict liability. *Westfield Gas* was the same. Therefore, in none of these three cases did the plaintiffs assert strict liability.

The defendant relies upon the following cases from other jurisdictions to support its proposition that the use of chlorine gas is not an abnormally dangerous activity. *Canida v. U.S. Reduction Co.* (1975), 294 Ala. 193, 314 So.2d 279; *McEvoy v. American Pool Corp.* (1948), 32 Cal.2d 295, 195 P.2d 783; *Fritz v. E.I. DuPont de Nemours and Co.* (1950), 45 Del. 427, 75 A.2d 256; *Kajiya v. Dept. of Water Supply* (1981), 2 Hawaii App. 221, 629 P.2d 635; *Baker v. Thompson-Hayward Chemical Co.* (1958), Mo.App., 316 S.W.2d 652; *Ranells v. City of Cleveland* (1975), 41 Ohio St.2d 1, 321 N.E.2d 885. However, as will be seen below, these cases provide little, if any, guidance on the issue before us.

In *Canida v. U.S. Reduction Co.*, a chlorine gas was discharged from a factory causing property damage. The complaint alleged negligence and wantonness. The trial court directed a verdict for the defendant on the wantonness charge. The jury found for the defendant on the negligence count. On appeal, the Alabama Supreme Court held that the lower court erred in directing a verdict on the wantonness count since there was at least a scintilla of evidence to support it. The court held that the error was not cured by the jury's not guilty verdict on the negligence count since the defendant could still be held to have acted wantonly. Thus, the court never had before it the issue of whether the use of chlorine gas constituted an abnormally dangerous activity prompting strict liability.

In *McEvoy v. American Pool*, the plaintiff was injured in a hit-and-run automobile accident when sodium hypochloride spilled on her. The plaintiff was in the car of her son who was a swimming pool service man. He had glass jars of the chlorine solution in his car. His employer who provided him the chemicals in the jars never warned him of their dangerous propensities. The plaintiff sued her son's employer for negligence. The trial court ordered a nonsuit. The California Supreme Court reversed, holding that questions of fact should have gone to the jury. Strict liability for an ultra-hazardous activity was never at issue.

In *Baker v. Thompson-Hayward Chemical*, the plaintiff was walking by the defendant's plant when he heard an explosion. He soon was enveloped in a gas cloud which caused severe personal injuries. The defendant bottled chlorine gas by piping liquid chlorine into their plant from railroad tank cars outside the plant. The complaint was phrased ambiguously, seemingly resting upon the theory of negligence. The Missouri Court of Appeals held that the complaint established a proper res ipsa loquitur case since the plaintiff did not know or allege the accident's cause, but alleged that it was an unusual occurrence which ordinarily resulted only from negligence. Once again, strict liability for an abnormally dangerous activity was never at issue.

In *Ranells v. City of Cleveland*, a municipally operated water department converted liquid chlorine into chlorine gas and added it to the water supply. During an emergency repair, chlorine gas escaped. As a result, two nearby residents died. The action was premised upon the theories of wanton misconduct (which would support punitive damages) and negligence (which the city admitted). The Ohio Supreme Court held that in the absence of a statute specifically authorizing punitive damages against a municipality, such could not be recovered. Strict liability was not at issue.

In *Kajiya v. Dept. of Water Supply*, the plaintiff raised Japanese carp (Koi) as pets in a fishpond. One day, he found all 52 of his koi dead. The plaintiff alleged that they died as a result of the defendant's addition of chlorine to the town's water supply without giving notice of the increased chlorination. The complaint was framed solely in terms of negligence. The trial court granted summary judgment for the defendant. The Hawaii Court of Appeals reversed, holding that there were material issues of fact. In a footnote, the court also said, "We decline to impose the strict liability imposed on the use of 'high explosives' in *Beckstrom v. Hawaiian Dredg. Co.*, 42 Haw. 353 (1958)." *Kaija*, 2 Hawaii App. at 224, 629 P.2d at 639, n. 4. In the *Beckstrom* case, the Hawaiian Supreme Court discussed *Rylands v. Fletcher* and § 519 of the First Restatement of Torts to impose strict liability for explosives. Thus, the *Kajiya* court specifically refused to impose § 519 liability for chlorine gas. However, this was dicta since the plaintiff alleged only ordinary negligence as a basis for recovery.

Although the *Kajiya* court did not impose strict liability, it made clear that for the degree of care to be reasonable, it must be proportionate to the danger. The court quoted from a treatise as follows:

"Liability for negligence in respect of *dangerous instrumentalities*, as liability for negligence generally, arises from the failure to use due care, and the general rules and principles governing the standard and degree of care which a person is required to exercise to avoid harming another and, in particular, the rule that the care exercised must be *in proportion to the danger*, are applied where an injury is caused by a dangerous instrumentality or agency." (Emphasis added).

*Kajiya*, at 224–25, 629 P.2d at 639, *quoting*, 57 Am.Jur.2d *Negligence* § 108 (1971). The court then stated, "Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous.... Chlorine, a toxic gas used among other things as a disinfecting agent in water purification and in insecticides and herbicides, Webster's Third New Int'l Dictionary (1967), falls within this category." *Kajiya*, at 225, 629 P.2d at 639. From this, the court held that there is a duty to warn when in control of a dangerous agency. Thus, although the court refused in dicta to impose strict liability for chlorine gas, it made it clear that the use of chlorine gas was dangerous, requiring a proportionate degree of care to satisfy the reasonable care standard.

Erbrich relies most heavily upon the case of *Fritz v. E.I. DuPont*. There, a railroad employee was overcome by chlorine fumes while on DuPont's premises. The complaint was premised upon, *inter alia*, absolute liability. The issue of absolute liability

for abnormally dangerous activities was one of first impression in Delaware. The Delaware Superior Court reviewed *Rylands v. Fletcher* and its progeny, opining that it was not well received in this country and that it was riddled with exceptions in England. The court then held as follows:

> "In the present case it was not unlawful for DuPont to have on its premises chlorine gas, nor was its presence there unusual, and *it cannot be said that the mere possession of chlorine gas by DuPont without more was dangerous per se in the light of recognized industrial use.* To say that any corporation or individual possessing or using dangerous substances upon its or his premises should be held liable as an insurer in the event of injury to others by reason of the mere possession, use, or escape thereof would be but to strangle corporate and individual enterprise in many well recognized fields of endeavor. If the rule of absolute liability is to be adopted in this State, it seems to me that its application should be confined to those operations which have connected with them *a history of doing injury* to others or the destruction of their property, and only in those cases where a nuisance by reason of their presence or use can be established.... [T]he mere use of chlorine gas by DuPont and its escape thereby injuring the plaintiff without more would not be, in the absence of negligence, enough upon which to base a recovery."

*DuPont*, 45 Del. at 437–38, 75 A.2d at 261 (emphasis added). The court thus refused to impose absolute liability for chlorine gas.

From all of the cases cited by Erbrich, only *Kajiya* and *DuPont* are relevant upon the issue of whether the use of chlorine gas is abnormally dangerous. On the other hand, the plaintiffs are unable to cite a single case which holds that chlorine gas deserves strict liability even in the absence of negligence. Although *Kajiya* and *DuPont* provide some insight to the case under present consideration, as our supreme court held, we must still determine the applicability of § 519 liability on a case-by-case basis, applying the factors listed in § 520. *Kentucy Stone*, at 126.

Plaintiffs, in their appellate briefs, continually urge us to examine the characteristics of chlorine gas in a factual vacuum to determine whether § 519 liability is appropriate. We of course recognize that chlorine gas, in its natural state, is dangerous. *See McEvoy*, 32 Cal.2d at 299, 195 P.2d at 785 ("highly dangerous"); *Adair v. Island Club* (1969), Fla.App., 225 So.2d 541, 544 ("an inherently dangerous commodity"); *Kajiya*, 2 Hawaii App. at 225, 629 P.2d at 639 ("inherently dangerous"); *Baker*, at 655 ("poisonous"). However, the fact that chlorine gas is dangerous is not determinative. When deciding whether to impose § 519 strict liability, we must not look at the abstract propensities or properties of the particular substance involved, but must analyze the defendant's activity as a whole. *Smith v. Kauffman* (1977), 174 Ind.App. 222, 230, 366 N.E.2d 1195, 1199 ("the filling of a gasoline tank is not an extra-hazardous activity *in and of itself*") (emphasis added); *see also Kentucky Stone*, at 126–27. If the rule were otherwise, virtually any commercial or industrial activity involving substances which are dangerous only in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable.

We hold that the manufacture of liquid household bleach using chlorine gas is not an abnormally dangerous activity. During oral argument on appeal, counsel for the plaintiffs conceded that the storage of chlorine gas in and of itself is not ultra-hazardous. We agree. *DuPont*, 45 Del. at 437, 75 A.2d at 261 ("it cannot be said that the mere possession of chlorine gas by DuPont without more was dangerous per se"). We further find that the exercise of reasonable care would prevent harm of exposure to raw chlorine gas. Section 519 is premised not upon negligence, but strict liability for activities presenting risks which cannot be eliminated by reasonable care. Section 520(c), which is one of the factors when applying § 519, provides further insight to the rationale for strict liability. Comment (h) to § 520 of the Restatement (Second) of Torts provides in pertinent part as follows:

"Most ordinary activities can be made entirely safe by the taking of all reasonable precautions; and when safety cannot be attained by the exercise of due care there is reason to regard the danger as an abnormal one.... What is referred to here is the *unavoidable risk* remaining in the activity, even though the actor has taken all reasonable precautions in advance and has exercised all reasonable care in his operation, so that he is not negligent."

(Emphasis added).[3]

Unlike blasting operations or crop dusting where the chances of damage or injury are inevitable despite the amount of care taken, the manufacture of household bleach with chlorine gas does not encompass the same unavoidable mishaps. The exercise of reasonable care would negate the risk of chlorine gas escaping into the atmosphere. At oral argument, counsel for the plaintiffs contended that the incident on October 12, 1984, would not have occurred but for Erbrich's fans within their plant which blew the chlorine gas outside. This reinforces our opinion that reasonable care could have avoided the incident. Therefore, strict liability under Restatement (Second) of Torts § 519 is inapplicable.

The plaintiffs additionally argue that this issue is inappropriate for summary judgment because of factual issues which the jury should decide. However, the issue of whether an activity is abnormally dangerous is a question of law for the court to decide. *SKF Farms v. Superior Court* (1984), 153 Cal.App.3d 902, 906, 200 Cal. Rptr. 497, 499; *Plourde v. Hartford Electric Light Co.* (1974), 31 Conn.Supp. 192, 195, 326 A.2d 848, 851; *Clark-Aiken Co. v. Cromwell-Wright Co.* (1975), 367 Mass. 70, 91, 323 N.E.2d 876, 888; *Bella v. Aurora Air, Inc.* (1977), 279 Or. 13, 24, 566 P.2d 489, 495 (en banc); *Langan v. Valicopters, Inc.* (1977), 88 Wash.2d 855, 861, 567 P.2d 218, 221 (en banc); Restatement of Torts § 520, comment h (1938); Restatement

(Second) of Torts § 520, comment 1 (1977). Thus, the issue is appropriate for summary judgment. Consequently, the Hancock Superior Court in the *Green* case erred when it denied Erbrich's motion for summary judgment on this issue. The propriety of the Johnson Circuit Court's action in sustaining Erbrich's motion for summary judgment on the ultra-hazardous issue is not before us since the plaintiffs did not attempt to certify the issue for interlocutory appeal.

*Issue Two*

The plaintiffs assert that Erbrich is liable for nuisance damages. Indiana Code section 34-1-52-1 defines a nuisance as follows:

"Whatever is injurious to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action."

In Indiana, the "coming to the nuisance" doctrine is embodied at Ind. Code § 34-1-52-4(f) which states:

"(f) No ... industrial operation or any of its appurtenances shall be or become a nuisance, private or public, by any changed conditions in the vicinity of the locality after the ... industrial operation ... has been in operation continuously on the locality for more than one (1) year, provided:

(1) there is no significant change in the hours of operation;

(2) there is no significant change in the type of operation; and

(3) the operation would not have been a nuisance at the time the ... industrial operation ... began on that locality.

As another condition, Ind. Code § 34-1-52-4(g) provides as follows:

(g) This section does not apply whenever a nuisance results from the negligent operation of an ... industrial operation or its appurtenances."

---

**3.** Although we do not ignore the other factors enumerated in § 520, we feel that the concept of

§ 520(c) is at the core of § 519 liability.

■ The plaintiffs focus upon the latter subsection, Ind. Code § 34–1–52–4(g), which would preclude Erbrich from claiming the "coming to the nuisance" doctrine if the nuisance was a result of negligence. The issue immediately arises as to which party has the burden of proof on this issue. We construe subsection (f) as a bar to a nuisance suit against an industrial operation meeting the statutory conditions. Subsection (g) is an exception to this bar. We think it is plain that Erbrich had the burden of proof on subsection (f). Thus, Erbrich had to prove that it satisfied all of the conditions of (f) in order to benefit from the "coming to the nuisance" doctrine.

■ The determination as to which party has the burden of proof on subsection (g) is not quite so easy. We have found no Indiana cases involving Ind. Code § 34–1–52–4(g) which discuss the burden of proof. Furthermore, we were unable to locate cases from other jurisdictions having statutes worded similarly. Thus, our inquiry must be developed upon general principles of evidence involving statutory exceptions. Generally, "one who relies on an exception to a general rule or statute has the burden of proving that the case falls within the exception, *unless the nonexistence of the exception is made a condition of the application of the rule.*" 31A C.J.S. *Evidence* § 104, at 173 (1964). (Emphasis added).

The Massachusetts Supreme Court faced a similar issue. In *Ansell v. Boston* (1926), 254 Mass. 208, 150 N.E. 167, the plaintiff brought suit against the city for damages to his truck caused by a poorly maintained road. The relevant statute provided, "If a person sustains ... damage ... in or upon a way ..., he may ... recover damages therefor from such ... city ...; but ... no action ... shall be maintained by a person whose carriage and the load thereon exceeds the weight of six tons." The plaintiff testified that the truck he was driving had a capacity of five tons. He estimated his load at three tons. The Massachusetts Supreme Court held that the plaintiff had the burden of proof on the issue of whether his truck and load did not exceed six tons.

Stated differently, the city did not have to prove that the weight was more than six tons. The court stated the rule as follows:

"The rule as to the burden of proof, applicable both to criminal and civil cases, is that, where the duty or obligation or crime is defined by statute, if there be an exception in the enacting clause, or an exception incorporated into the general clause, descriptive of the duty or obligation or crime, then the party pleading must allege and prove that his adversary is not within the exception; *but if the exception is in a subsequent, separate or distinct clause or statute, then the party relying on such exception must allege and prove it.*"

*Id.* at 211, 150 N.E. at 169 (emphasis added). Other courts have utilized this approach. *Protective Life Insurance Co. v. Swink* (1931), 222 Ala. 496, 132 So. 728; *In re Sitkin's Will* (1934), 151 Misc. 448, 271 N.Y.S. 688; *see also* 29 Am.Jur.2d *Evidence* § 147 (1967).

We hold that this approach is appropriate for the case under consideration. As we stated earlier, Erbrich clearly has the burden of proof on satisfying the conditions listed in Ind. Code § 34–1–52–4(f). Ind. Code § 34–1–52–4(g) is an exception for negligence to subsection (f)'s application. Our legislators did not incorporate the negligence exception in the same subsection which specifies the conditions for the "coming to the nuisance" doctrine. If they had, Erbrich would have the burden of proving that it was not negligent. *Ansell.* Instead, our legislators saw fit to put the exception within a subsequent, separate, and distinct subsection. Thus, the plaintiffs have the burden of proving Erbrich's negligence so as to stop Erbrich from claiming the "coming to the nuisance" doctrine codified in subsection (f). *Id.*

■ In the plaintiffs' motion in opposition to Erbrich's motion for summary judgment, the plaintiffs failed to present any evidence that negligence on Erbrich's part caused a nuisance. The affidavits attached to the motion in opposition, except for one, were statements of nearby residents concerning the chlorine odors prior to October

12, 1984, and the conditions on that day. The affidavit included specific damage calculations, also. William Servaas, an expert witness, stated in affidavit form that, in his opinion, chlorine gas is ultra-hazardous. His affidavit never mentioned Erbrich's negligence as creating a nuisance. The other exhibits submitted by the plaintiffs dealt with only the general propensities of chlorine gas. Thus, the plaintiffs failed to present any evidence upon subsection (g) for which they had the burden of proof. We must note that the negligence relevant to subsection (g) has nothing to do with the issue of Erbrich's negligence for the incident on October 12, 1984. Erbrich concedes that the plaintiffs still have a viable negligence claim pending at trial for the October 12 occurrence.

The next question is whether Erbrich presented undisputed evidence that it satisfied the conditions for the "coming to the nuisance" doctrine embodied in subsection (f) of Ind. Code § 34-1-52-4. As we noted earlier, Erbrich had the burden of proof to satisfy the statutory elements. Erbrich presented uncontradicted evidence that it had been producing bleach continuously since 1932 at the same location and that it had not changed significantly the hours or type of operation. The only issue which merits our attention is whether Erbrich demonstrated that its bleach operations did not constitute a nuisance in 1932, the date Erbrich began manufacturing bleach.

When Erbrich filed a motion for summary judgment in both actions, it included affidavits of its president and of an employee who had been with Erbrich since 1922. The affidavits established that when Erbrich commenced bleach production in 1932, Erbrich was located in an industrial/commercial neighborhood. Other businesses included a lumber yard, a cement company, a coal yard, a concrete curb manufacturer, and a brick company. There were just a few homes in the area. The area was not serviced by public utilities or public transportation. In the late 1930's, the area began to develop as a residential neighborhood. The affidavits also alleged that prior to October 12, 1984, there had never been a release of raw chlorine gas into the neighborhood. Any unpleasant odors were incidental to the bleach manufacturing process. Furthermore, the odors remained the same over the years. We hold that these materials establish the lack of any genuine issue of material fact as to Erbrich's comformity with Ind. Code § 34-1-52-4(f)(3).

Although the party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact, Indiana Rules of Procedure, Trial Rule 56(E) provides that "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits, or ... otherwise ..., must set forth specific facts showing that there is a genuine issue for trial." *E.g., Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276, 280; *Nationwide Mutual Insurance Co. v. Neville* (1982), Ind. App., 434 N.E.2d 585, 589, *trans. denied; Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 160. Thus, the plaintiffs had the burden of coming forward with evidence that Erbrich's bleach production in 1932 was a nuisance to at least raise a genuine issue of material fact. In both actions, the plaintiffs filed a motion in opposition to summary judgment supported by many affidavits.[4] However, none of these affidavits pertained to whether Erbrich's bleach operations constituted a nuisance in 1932. The affidavits of the resident-plaintiffs generally describe the odors prior to October 12, 1984, and the accident on that date. These affidavits also enumerate precisely the damages sustained. The remaining affidavits concerned chlorine gas generally. Thus, the affidavits were not relevant to whether Erbrich created a nuisance in 1932. Since Erbrich presented sufficient evidence to establish that no genuine issue of material

**4.** In the *Green* action, the trial court granted Erbrich's motion to strike these affidavits for failure to comply with Trial Rule 56(E). The trial court in the *Wills* action denied Erbrich's similar motion.

Because of our resolution of this issue, it is unnecessary for us to determine whether the affidavits filed in *Wills* complied with T.R. 56(E).

fact existed as to whether Erbrich satisfied Ind. Code § 34–1–52–4(f)(3), summary judgment in Erbrich's favor on the issue of nuisance is appropriate. Therefore, both trial courts erred in denying summary judgment for Erbrich.

Affirmed in part and reversed in part.

Costs assessed against the appellees.

NEAL and HOFFMAN, JJ., concur.