

FILED

Sep 29 2023, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Margaret M. Christensen
Sarah K. Jackson
Dentons Bingham Greenbaum LLP
Indianapolis, IN

ATTORNEYS FOR APPELLEE

Brett T. Clayton
Reminger Co., L.P.A.
Indianapolis, Indiana

Alex M. Beeman
Reminger Co., L.P.A.
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cave Quarries, Inc., <br> *Appellant / Cross-Appellee-Plaintiff,* <br><br> v. <br><br> Warex LLC, <br> *Appellee / Cross-Appellant-Defendant.* | September 29, 2023 <br><br> Court of Appeals Case No. 22A-CT-1916 <br><br> Appeal from the Orange Circuit Court <br><br> The Honorable Steven L. Owen, Judge <br><br> Trial Court Cause No. 59C01-2109-CT-191 |

**Opinion by Judge Kenworthy**
Judge Crone and Senior Judge Robb concur.

**Kenworthy, Judge.**

## Case Summary

Cave Quarries, Inc. ("Cave Quarries") owns real estate in Paoli, Indiana, on which it conducts a limestone quarrying operation. Warex LLC ("Warex") provides explosives and blasting services. On March 3, 2021, Warex carried out a blast on Cave Quarries' property at Cave Quarries' request. The resulting explosion destroyed an asphalt plant on the property.

Cave Quarries filed a complaint for damages against Warex alleging strict liability and negligence, and later sought summary judgment declaring Warex strictly liable for Cave Quarries' damages. Following a hearing, the trial court determined strict liability was not the applicable standard and denied the motion.

In this interlocutory appeal, Cave Quarries alleges the trial court erred because "[s]trict liability is the long-established standard applicable to blasting activities" and "applying any standard other than strict liability in this case is contrary to Indiana law." *Appellant's Br.* at 20. We conclude the trial court did not err in denying Cave Quarries' motion for summary judgment.

## Facts and Procedural History[1]

Cave Quarries extricates limestone from its quarry for use as gravel or asphalt. To get the limestone, holes are drilled in the stone according to a "shot design"

---

[1] We heard oral argument at the Indiana Statehouse on July 25, 2023. We commend counsel for their preparation and oral presentations.

created by the blaster[2] identifying—among other things—the number, diameter, depth, and location of the holes. Explosives are then placed in the holes to blast the stone loose. Until 2015, Cave Quarries employed a licensed blaster and did its own blasting at the quarry. Warex provided explosive materials to Cave Quarries during this time. When Cave Quarries' in-house blaster became unavailable, Warex began to also conduct the blasts. Cave Quarries and Warex did not have a written contract; Cave Quarries would contact Warex when it needed blasting done and tell Warex "where they want it and what they want [it] to do." *Appellant's App. Vol. 2* at 50. Warex would mark the area to be blasted and Cave Quarries would engage a third-party drilling company to drill the holes.

[5] Typically, limestone is blasted from the back of Cave Quarries' property and transported as needed to a crushing plant at the front of the property. Some of the crushed stone is then transferred to the adjacent asphalt plant to be manufactured into asphalt. The asphalt plant is within twenty to twenty-five feet of a wall (the "high wall") that descends to the floor of the quarry. At some point, Cave Quarries decided to blast the high wall so it would have a stockpile

---

[2] A blaster is "the person that is in charge of loading the blast holes . . . and setting off the shots." *Appellant's App. Vol. 2* at 37; *see also* 675 Ind. Admin. Code 26-1-1(10) (defining a blaster, in part, as an individual who "supervises or directs and performs the loading and firing of explosives materials[.]") Blasters are individually licensed by each state they work in and are subject to annual education requirements. *See Appellant's App. Vol. 2* at 38.

of stone near the plants and could maintain production during the winter when weather conditions prohibited transporting stone from the back of the quarry.

[6] Because the wall had to be lowered in phases, Warex conducted multiple small blasts on the high wall beginning in 2018. In early 2021, Cave Quarries erected steel plates around the bottom of the asphalt plant to protect the natural gas lines and gauges and meters from damage "just in case a big rock were to go over there." *Appellant's App. Vol. 3* at 57. Cave Quarries knew the asphalt plant was within the "radius of risk" from high wall blasts. *Id.* at 94.

[7] On March 3, 2021, Warex conducted a blast on the high wall at Cave Quarries' request. Joshua Collins, a Warex employee and licensed blaster, was in charge that day and had the "final say-so." *Appellant's App. Vol. 2* at 82. But many aspects of the blast were "mutual decision[s]" between Collins and Randy Key, Cave Quarries' superintendent, including the decision to have a larger blast. *Id.* Cave Quarries had become concerned about the cost of smaller blasts because it paid "so much [per] shot fee." *Appellant's App. Vol. 3* at 60. The blast did not go as planned and the asphalt plant was destroyed.

[8] The blast was designed to "draw itself away from the plant and . . . fold into itself as it continue[d]." *Appellant's App. Vol. 2* at 86. Collins explained the blast did not perform as designed because "[t]here was a mud seam at the bottom of the shot and as [the blast] was initiated it slipped out on the mud seam." *Id.* In this context, "mud" means "any kind of a soft material." *Id.* at 100. The mud

seam was unknown before the blast—"all the holes were drilled solid according to the drill reports" provided by the third-party drilling company. *Id.* at 89.

[9] Cave Quarries filed a complaint for damages against Warex, alleging Warex was strictly liable for Cave Quarries' damages, or, alternatively, was negligent in its use of explosives. Warex, in its answer, admitted it was from time to time engaged by Cave Quarries to provide services involving explosives in the quarrying operation, that it provided those services on March 3, 2021, and that the explosion caused damage to Cave Quarries' property. Warex denied it was negligent in its use of the explosives, and denied it was liable for Cave Quarries' damages.

[10] After the parties conducted discovery, Cave Quarries moved for partial summary judgment in its favor on the strict liability claim asserting there was "no issue as to any material fact concerning liability and causation." *Id.* at 24.

[11] Warex responded to Cave Quarries' motion and filed its own motion for summary judgment. Warex disputed that strict liability was the appropriate standard, but alleged if it was, then Warex was entitled to summary judgment on the strict liability claim because Cave Quarries assumed the risk of damage to its plant. In the alternative, Warex requested an order of partial summary judgment "finding that a negligence standard applies, and . . . that material issues of fact remain which preclude the entry of summary judgment in Cave Quarries' favor." *Id.* at 129.

[12] Following a hearing, the trial court issued an order stating:

> [T]he cases cited by [Cave Quarries] are distinguishable from the case at hand in that [Warex] was contracted and employed by [Cave Quarries] to engage in blasting activities for the benefit of [Cave Quarries]. [Cave Quarries] was not a mere innocent bystander to [Warex's] actions nor the harm that resulted. [Warex's] actions, looking at the facts in the non-moving party's favor, were done at the direction of [Cave Quarries]: the location of the charges, the number of charges, and the amount of explosives used were all the result of [Cave Quarries'] decisions. Thus, the Court finds that the application of a strict liability standard that has traditionally been associated with the use of explosives should not be extended to the facts of this case, that rather the negligence standard with comparative fault should be the applicable law.

*Id.* at 9–10. The trial court found material issues of fact exist regarding Cave Quarries' negligence claim that should be determined by a jury and stated it was denying both parties' motions for summary judgment. Cave Quarries then perfected this discretionary interlocutory appeal.[3]

## Summary Judgment Standard of Review

[13] We review a trial court's summary judgment decision *de novo*, using the same standard as the trial court. *Performance Servs., Inc. v. Randolph E. Sch. Corp.*, 211 N.E.3d 508, 511 (Ind. 2023). We consider only the evidence designated to the trial court and construe all facts and reasonable inferences in favor of the non-moving party. *Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 863 (Ind. 2022). Summary

---

[3] Warex cross-appeals, raising contingent issues in the event we reverse the trial court's decision. Because we affirm, we need not address Warex's cross-appeal issues.

judgment is appropriate only when the designated evidence shows "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law[.]" Ind. Trial Rule 56(C). When parties file cross-motions for summary judgment, "we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015).

[14] The party appealing the trial court's summary judgment determination must persuade us the ruling was erroneous. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). A trial court's findings of fact and conclusions of law in its summary judgment ruling aid our review, but they do not bind us. *Matter of Supervised Est. of Kent*, 99 N.E.3d 634, 637 (Ind. 2018).

## Trial Court Did Not Err Regarding Strict Liability

[15] Cave Quarries contends the trial court erred as a matter of law by denying its motion for summary judgment on its strict liability claim.

[16] Strict liability assumes no negligence by the defendant but imposes liability anyway. *See Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003). The common law concept of strict liability was first articulated in the English case of *Rylands v. Fletcher*, holding a defendant is liable regardless of negligence for damages caused when he uses his land in an unusual way likely to injure a neighbor. 1868 WL 9885 (H.L. 1868). The rationale behind the doctrine "is that in terms of the comparative fault of the parties, the defendant acting for the defendant's own profit or pleasure is more at fault than the innocent plaintiff

who has no part in the creation of the abnormal risk." 57A Am. Jur.2d Negligence § 360. Later, this concept was incorporated into the Restatement of Torts. In general, we now look to Sections 519 and 520 of the Restatement (Second) of Torts to determine whether an activity is subject to strict liability. *Erbrich Prods. Co., Inc. v. Wills*, 509 N.E.2d 850, 853 (Ind. Ct. App. 1987) (determining the manufacture of chlorine bleach is not an abnormally dangerous activity under Sections 519 and 520), *trans. denied*.

[17] Section 519 provides:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) of Torts: Abnormally Dangerous Activities § 519 (1977). In turn, to determine whether an activity is "abnormally dangerous," we generally look to the factors set forth in Section 520. *See Fechtman v. U.S. Steel Corp.*, 994 N.E.2d 1243, 1247 (Ind. Ct. App. 2013) (applying the Section 520 factors in determining step of steel manufacturing process which caused release of carbon monoxide fumes was not an "abnormally dangerous activity"), *trans. denied*. Historically, however, blasting has been considered an abnormally dangerous activity in Indiana without specific reference to the Section 520 factors. *See Hedges v. Pub. Serv. Co. of Ind., Inc.*, 396 N.E.2d 933, 936 n.4 (Ind.

Ct. App. 1979) ("Without explicitly adopting [Section] 520 we have applied the doctrine of strict liability for ultra-hazardous activities[4] in cases involving blasting operations.").

[18]     In Indiana, strict liability for blasting activities finds its origins in the law of trespass.  "At common law, absolute liability exists when there is a physical invasion (a trespass) *of another's property*, as by falling debris from an explosion." *Enos Coal Mining Co. v. Schuchart*, 188 N.E.2d 406, 407 (Ind. 1962) (emphasis added).  Thus, in *Wright v. Compton*—where a person was injured by flying debris from a quarry blast while traveling on an adjacent road—the Court found the defendant was liable for the plaintiff's damages without proof of negligence because the "act of casting fragments of rock upon the plaintiff, to his injury" was unlawful even though the act of blasting and quarrying rock was a lawful trade.  53 Ind. 337, 340–41 (1876).  And in *Enos*—where a home was damaged by vibrations from blasting at a nearby strip mining operation—the Court found "neither logic nor reason" supported a difference in liability when damage is caused by a vibration rather than debris, concluding "there is in fact a trespass under the law, whether it be caused by falling debris or by a vibration or

---

[4] Section 519 of the first Restatement of Torts stated one who carries on an "ultrahazardous activity" is liable to another for harm even though "the utmost care" was exercised to prevent it.  Restatement of Torts § 519 (1938).  In *Erbich*, we noted the "difference in nomenclature" between "ultrahazardous" and "abnormally dangerous" is "of no importance."  509 N.E.2d at 853 (citing W. Prosser and W. Keeton, *Handbook of the Law of Torts* § 78 at 555–56 (1984)).

concussion as a result of an explosion on nearby land." 188 N.E.2d at 407, 410.[5]

[19] The Court in *Enos* explained the policy behind finding blasting activities subject to strict liability:

> A business should bear its own costs, burdens, and expenses of operation, and these should be distributed by means of the price of the resulting product and not shifted, particularly, to small neighboring property owners for them to bear alone. We can understand no sensible or reasonable principle of law for shifting such expense or loss to persons who are not involved in such business ventures for profit.

*Id.* at 408. In other words, "strict liability places the loss from an activity proven to generate risk of loss on the one who benefits from the activity rather than an innocent party." *Haseman v. Orman*, 680 N.E.2d 531, 535 (Ind. 1997).

[20] This Court in *Galbreath v. Eng'g Constr. Corp.* then considered the case of a person whose injury was caused indirectly by a blast. 273 N.E.2d 121, 122 (Ind. Ct. App. 1973), *trans. denied*. The defendant detonated dynamite near a gas main and the main ruptured. The plaintiff, an employee of the gas company, was repairing the main and was injured when the escaping gas

---

[5] An earlier Appellate Court of Indiana decision held a plaintiff's complaint alleging blasting by a strip-mining company "violently and severely" shook and caused damage to a nearby building housing their auto-repair shop did not state a cause of action in part because it did not allege a physical trespass. *Boonville Collieries Corp. v. Reynolds*, 163 N.E.2d 627, 630 (Ind. Ct. App. 1960). *Enos* explicitly overruled *Boonville*, noting transfer had not been sought in that case. 188 N.E.2d at 410.

ignited and exploded. Acknowledging no cases in Indiana or elsewhere had permitted recovery for blasting damage without a trespass by debris or damage directly inflicted by concussion vibrations, the Court nonetheless found it "absurd to reject such absolute liability for damage or injury also proximately caused though not immediately or directly so." *Id.* at 124. Accordingly, the Court adopted a rule of strict liability for damages proximately caused by blasting:

> We now therefore hold that if acknowledged extra-hazardous activity, e.g., blasting, proximately causes damage, whether by direct impact of debris or by concussion waves, or otherwise, the actor is absolutely liable for such damage without regard to his exercise of reasonable care in the carrying out of such activity.

*Id.* at 125. The *Galbreath* Court acknowledged the breadth of this ruling:

> [W]e have employed our understanding of the spirit as well as the letter of the law, and a dash of what we hope to be common sense, to reach the result in the case before us. We have extended—knowingly so—the absolute liability doctrine to all instances in which the damage or injury is proximately caused by the extra-hazardous activity.

*Id.* at 129.

[21] Indiana appellate courts have decided no blasting cases since *Galbreath*, although several cases addressing other facts have noted the general rule that blasting is an abnormally dangerous activity. *See, e.g.*, *Bridges v. Ky. Stone Co., Inc.*, 425 N.E.2d 125, 126 n.2 (Ind. 1981) (noting Indiana "accords absolute

liability" to the use and explosion of dynamite, but liability for the *storage* of dynamite must be determined case-by-case under the Section 520 factors).

[22] Cave Quarries asserted to the trial court that "[t]his is a strict liability in tort case, as every case involving damage by blasting in Indiana has been." *Appellant's App. Vol. 3* at 122. It contends on appeal the trial court erred "by blatantly refusing to apply strict liability and instead considering whether to 'extend' strict liability to the facts at hand." *Appellant's Br.* at 15. Cave Quarries essentially argues strict liability automatically applies here based solely on the nature of the activity without consideration of the accompanying facts.[6] We disagree.

[23] Just as the courts in *Enos* and *Galbreath* before us, we are asked to decide if a set of facts not previously addressed by our appellate courts subjects the blaster to strict liability. Unlike the courts in *Enos* and *Galbreath*, however—each of which found no logical reason not to extend the rule of strict liability to the facts of those cases—we *do* find such reason here.

[24] We agree with Cave Quarries' general premise that blasting has long been considered an ultrahazardous or abnormally dangerous activity subject to a

---

[6] Cave Quarries also points to Indiana Administrative Code provisions regulating the use and licensure of explosives as supporting the imposition of strict liability. *See* 675 Ind. Admin. Code 26-3-1(l) (stating the blaster "shall be responsible for the results and consequences of any loading or firing of explosive materials"). But Cave Quarries acknowledged at oral argument that the Administrative Code does not create substantive law or a private right of action.

strict liability standard in Indiana.[7]  But two important points distinguish this case from *Wright*, *Enos*, and *Galbreath*.

[25]   One, this case is not "the classic example of an abnormally dangerous activity historically subject to strict liability." *Selby v. N. Ind. Pub. Serv. Co.*, 851 N.E.2d 333, 339 (Ind. Ct. App. 2006), *trans. denied*.  The "classic example" includes harm caused "to another": a traveler on a road passing by a quarry, owners of a home near a blasting site, or a person repairing a gas line that was ruptured by a blast.  To the extent Cave Quarries argues *Galbreath* held the mere act of blasting—anytime, anywhere—makes the blaster strictly liable to anyone impacted, Cave Quarries reads *Galbreath* too broadly.  The court in *Galbreath* did extend the strict liability doctrine by moving beyond trespass, *see* 273 N.E.2d at 129, but did so within the rubric of the law announced in *Wright* and *Enos*.  That is, all three cases applied strict liability to protect unsuspecting neighbors or innocent third parties.[8]

[26]   And two, applying strict liability in those situations appropriately placed the risk of loss from a dangerous, unpredictable activity "*on the one who benefits from the activity* rather than an innocent party." *Haseman*, 680 N.E.2d at 535

---

[7] For this reason, we decline to accept Warex's invitation to analyze its blasting activity under the Section 520 factors and independently determine whether it is an abnormally dangerous activity. *See Appellee's Br.* at 20.

[8] Cave Quarries also points out that both this court and the trial court are "obliged to follow precedents established by the Supreme Court of Indiana." *Appellant's Br.* at 17.  We have no quarrel with this proposition but note *Galbreath* is not an Indiana Supreme Court decision and therefore not binding on this panel.

(emphasis added); *see* Restatement (Second) of Torts § 519, comment d (stating strict liability "is founded upon a policy of the law that imposes upon anyone *who for his own purposes creates an abnormal risk of harm to his neighbors*, the responsibility of relieving against that harm when it does in fact occur") (emphasis added). The same considerations are not at play when the plaintiff is involved and stands to benefit from the activity. *Cf. Enos*, 188 N.E.2d at 408 (finding "no sensible or reasonable principle of law for shifting [the expenses of operation] to *persons who are not involved in such business ventures for profit*") (emphasis added).

[27] Here, Cave Quarries is not an unsuspecting neighbor or an innocent third party. Cave Quarries is in the business of quarrying limestone, a business which requires regular blasting activity. The blasting on March 3 was conducted at Cave Quarries' request, on Cave Quarries' property, for Cave Quarries' business purposes. Cave Quarries decided where the blast would take place, directing Warex to conduct blasts on the high wall even knowing its asphalt plant was within the "radius of risk" from high wall blasts. *Appellant's App. Vol. 3* at 94. And it asked for a larger blast on March 3 because of concerns over the cost of multiple smaller blasts. Cave Quarries understood there was a risk to its property and asked Warex to conduct the blast anyway. *See Carroll-Boone Water Dist. v. M. & P. Equip. Co.*, 661 S.W.2d 345, 351 (Ark. 1983) (noting "[s]trict liability is a harsh rule" and should not be applied "when blasting is conducted on the property damaged with the knowledge and consent of the owner"); *cf. Guido v. N.Y. Tel. Co.*, 538 N.Y.S.2d 87, 89 (N.Y. App. Div. 1989) (rejecting

argument that property owners could not recover in strict liability for damage caused to their own property by blasting because owners were unaware their request for installation of underground utilities would require blasting).

[28] Our decision is grounded in Indiana law imposing strict liability for blasting as an abnormally dangerous activity as applied to the unique circumstances of this blast. But we note the language of Restatement Section 519 also supports our decision. Section 519(1) does not say the general principle of strict liability for abnormally dangerous activities is that "one who carries on an abnormally dangerous activity *is strictly liable* for harm." Instead, it states the principle as, "one who carries on an abnormally dangerous activity *is subject to strict liability* for harm." This language implicitly acknowledges the default is *not* simply absolute liability in every situation. Because there is not "another" here, and because Cave Quarries requested the blasting be done for its own business purposes with full knowledge of the nature of the activity, subjecting Warex to strict liability for its blasting activities is not consistent with our prior cases or the purpose of the rule.

[29] The trial court did not err in denying Cave Quarries' motion for summary judgment. Because Warex's blasting activity is not subject to strict liability and a negligence standard will apply going forth, the trial court effectively granted Warex's motion for summary judgment with its order, and on remand we direct the trial court to explicitly enter judgment in Warex's favor on the strict liability count.

## Conclusion

We accept the historical rule in Indiana that blasting is an abnormally dangerous activity, but we decline to find Warex is subject to strict liability under these facts because neither the purpose nor the policy behind imposing strict liability for blasting activities would be served by doing so here. Accordingly, we affirm the judgment of the trial court denying Cave Quarries' motion for summary judgment on strict liability and remand for further proceedings on Cave Quarries' remaining count of negligence.

Affirmed and remanded.

Crone, J., and Robb, Sr.J., concur.