994 P.2d 1054

**Kenneth HAYASHI, Claimant–Appellee,**

v.

**SCOTT COMPANY, Employer–Appellant,**

**and**

**Argonaut Insurance Company, Insurance Carrier–Appellant.**

No. 21877.

Supreme Court of Hawai'i.

March 14, 2000.

Herbert R. Takahashi, Stanford H. Masui, Danny J. Vasconcellos and Rebecca L. Covert (Takahashi, Masui & Vasconcellos), on the briefs, Honolulu, for employee-appellee.

Kenneth T. Goya and Robin Horner (Ayabe, Chong, Nishimoto, Sia & Nakamura), on the briefs, Honolulu, for employer-appellant and insurance carrier-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Intermediate Court of Appeals Associate Judge ACOBA, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

This appeal arises from the decision and order of the Labor and Industrial Relations Appeals Board (LIRAB) denying appellants Scott Company (Scott) and Argonaut Insurance Company's (Argonaut) motion for reconsideration, dated August 11, 1998. At issue is whether the LIRAB properly determined when the statute of limitations for a workers' compensation claim begins to run for non-latent injuries under Hawai'i Revised Statutes (HRS) § 386–82 (1993).[1] Specifically, the question is whether, as Scott and Argonaut argue, appellee Kenneth Hayashi's (Hayashi) workers' compensation claim is barred by the two-year statute of limitations as set forth in HRS § 386–82.

For the following reasons, we affirm both the LIRAB's decision and order filed on February 10, 1998 and its denial of the motion for reconsideration, dated August 11, 1998.

1. HRS § 386–82 **Claim for compensation; limitation of time**

The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations (1) *within two years after*

## I. BACKGROUND

On May 21, 1991, Hayashi was driving a four-wheeled motorized bike, in the course and scope of his employment, when he lost control of the bike and flipped over the handlebar. Hayashi was taken to Hilo Hospital where he received emergency treatment for a variety of injuries, including lacerations and abrasions to his face and hands. Hayashi was treated and released on the same day.

Subsequently, on May 23, 1991, Hayashi was examined by Ben Hur, M.D., who diagnosed Hayashi with lacerations and skin abrasions to face and hands. Dr. Hur removed Hayashi's stitches and released him for work on May 31, 1991.

Between December 24, 1991 and February 29, 1992, Deborah Agles, M.D. treated Hayashi at Straub Medical Clinic. Dr. Agles reported that Hayashi complained of daily headaches that he believed were related to the head trauma he suffered during his work accident. To rule out underlying cranial pathology, Dr. Agles ordered a CT scan of Hayashi's head. On February 13, 1992, a CT scan was performed, and Hayashi's results were normal.

In April 1992, Edward Dawrs, D.C., began to treat Hayashi's headaches along with other aches and pains with chiropractic care at the Keawe Chiropractic Center.

On June 4, 1992, Hayashi was examined by Thomas Sakoda, M.D., a neurosurgeon. Dr. Sakoda informed Hayashi that his headaches and physical ailments might be the result of an injury to the temporomandibular joint (TMJ injury). This was the first time Hayashi had been informed that his ailments were related to a TMJ injury. Dr. Sakoda also suggested that because TMJ injuries fell outside his field of expertise, Hayashi be evaluated by Ben Kawasaki, D.D.S., M.S.D. However, instead of following Dr. Sakoda's advice, Hayashi resumed chiropractic treatments at the Keawe Chiropractic Center.

*the date at which the effects of the injury for which the employee is entitled to compensation have become manifest,* and (2) within five years after the date of the accident or occurrence which caused the injury.
(Emphasis added.)

On March 3, 1994, Hayashi filed a claim for workers' compensation. At this time, Hayashi described his injuries as "headaches, blurred vision, cervical and lumbar injuries, popping of right TMJ, radicular pain down right lower extremity, [and] scar," which he claimed derived from his May 21, 1991 work accident. By decision of the Director of the Department of Labor and Industrial Relations (DLIR) Disability Compensation Division (DCD) (hereinafter "DLIR–DCD"), dated March 24, 1994, Hayashi was awarded benefits for injuries to his head, the right side of his face, his neck, his lower back, his hands, and his right leg.

On July 15, 1994, Hayashi was evaluated by Robert Kuribayashi, D.D.S., pursuant to a request by Scott and Argonaut for an independent dental evaluation. Dr. Kuribayashi concluded that Hayashi was suffering from a TMJ injury. However, it was not until March 6, 1995 that Hayashi was finally evaluated by Dr. Kawasaki. Dr. Kawasaki's report also confirmed that Hayashi suffered from a TMJ injury.

On May 10, 1995, during a DLIR–DCD hearing, it was determined that Hayashi's TMJ injury was compensable. The DLIR–DCD concluded that Hayashi first became aware of the TMJ injury on June 4, 1992, following Dr. Sakoda's examination.

On February 10, 1998, LIRAB issued its decision and order, including the following relevant findings of fact and conclusions of law:

## FINDINGS OF FACT

4. Since the May 21, 1991 accident, Claimant experienced daily "pounding" headaches, and difficulty chewing. He attributed his symptoms to his head injury.

7. Thereafter, Claimant returned to Honolulu and came under the care of Dr. Thomas Sakoda, a neurosurgeon. Dr. Sakoda reported on June 26, 1992, that Claimant presented to him on June 4, 1992, with complaints of headaches, difficulty chewing, popping of the jaw when opening his mouth, and pain in the temporomandibular joint ("TMJ"). According to Dr. Sakoda, these symptoms began shortly after the work accident and were consistent with a diagnosis of a TMJ disorder.

9. On March 3, 1994, Claimant filed a claim for his TMJ condition.

11. Claimant testified at trial that although he experienced headaches, jaw pain and popping, and difficulty chewing almost immediately after the work accident, he had always attributed those symptoms to his head injury. He further testified that he had never heard of a condition called TMJ disorder until it was diagnosed by Dr. Sakoda in June of 1992.

14. Based on the evidence presented, we find that June 4, 1992 is the date that Claimant, as a reasonable person, knew or should have known the nature, seriousness and probable compensable character of his TMJ injury. On that basis, we further find that Claimant's TMJ injury did not manifest until June 4, 1992.

## CONCLUSIONS OF LAW

Pursuant to Hawaii Revised Statutes ("HRS") § 386–82, the right to compensation under Chapter 386 is barred unless a written claim is filed with (sic) two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest (sic), and within five years after the date of the accident.

The limitation period for a claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of an injury or disease. *Demond v. University of Hawaii*, 54 Haw. 98, 503 P.2d 434 (1972).

Having found that June 4, 1992 is the date that Claimant recognized the nature, seriousness, and probable compensable character of his TMJ disorder, that his TMJ disorder did not manifest until that date, and that his claim, filed on March 3, 1994, was filed within two years of that date, we conclude that Claimant's claim for a TMJ disorder was timely filed, pursuant to HRS § 386–82.

Scott and Argonaut's motion for reconsideration of the LIRAB's decision and order

was denied on August 11, 1998. This timely appeal followed.

## II. STANDARD OF REVIEW

■■■ Appellate review of the LIRAB's decision is governed by Hawai'i Revised Statutes (HRS) § 91–14(g) (1993), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g). "Under HRS § 91–14(g), [COLs] are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); [FOFs] are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." *Potter v. Hawaii Newspaper Agency,* 89 Hawai'i 411, 422, 974 P.2d 51, 62 (1999) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Konno v. County of Hawai'i,* 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997) (quoting *Bragg v. State Farm Mutual Auto. Ins.,* 81 Hawai'i 302, 305, 916 P.2d 1203, 1206 (1996))))).

Moreover, we have observed that:

[a]ppeals taken from [FOFs] set forth in decisions of the [LIRAB] are reviewed under the clearly erroneous standard. Thus, the court considers whether such a finding is [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.] The clearly erroneous standard requires the court to sustain the [LIRAB's] findings unless the court is left with a firm and definite conviction that a mistake has been made.

A [COL] ... is not binding on an appellate court and is freely reviewable for its correctness. Thus, the court reviews [COLs] *de novo,* under the right/wrong standard.

*Bumanglag v. Oahu Sugar Co., Ltd.,* 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (quoting *Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994) (brackets in original)).

*Kahana Sunset Owners Ass'n v. County of Maui,* 86 Hawai'i 66, 68–69, 947 P.2d 378, 380–81 (1997) (some brackets added and some in original).

## III. DISCUSSION

A. *The LIRAB properly determined when the statute of limitations begins for a HRS § 386–82 claim.*

■■■ The instant case presents a very narrow question on appeal — when does the statute of limitations for a HRS § 386–82 workers' compensation claim begin to run? The LIRAB determined that the limitation period of a "claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of an injury or disease." *Demond v. University of Hawaii,* 54 Haw. 98, 104, 503 P.2d 434, 438 (1972).

Scott and Argonaut maintain that, under HRS § 386–82, the two-year statute of limitations begins to run at the point when the employee's work-related injury has a disabling effect that requires the employee to seek medical attention. Put another way, they assert that a workers' compensation claim starts to accrue when the disabling effects of the injury become manifest, either upon seeking medical treatment or by being disabled from performing the employee's ordinary work duties. *Tomita v. Hotel Service Center,* 2 Haw.App. 157, 159, 628 P.2d 205, 208 (1981).

In *Tomita*, the Intermediate Court of Appeals (ICA) affirmed a LIRAB decision determining that the employee's claim was timely and compensable because it was filed within two years of the injury becoming manifest. The ICA stated that the employee's injury became manifest when the effects of the injury forced [the employee] to seek medical attention and prevented her from working. *Tomita* at 159, 628 P.2d at 208.

In *Demond*, this court previously held that "the time period for notice or claim does not begin to run until the claimant, as a reasonable [person], should recognize the nature, seriousness and probable compensable character of his injury or disease." *Demond* at 104, 503 P.2d at 438 (quoting 3 Larson, Law of Workmen's Compensation s 84.20 (1971)). In applying this rule, this court denied a ten-year-old workers' compensation claim, determining that Demond, "who was represented by counsel, should have recognized the compensable character of her injuries." *Id.*

Both *Tomita* and *Demond* set forth reasonable interpretations of HRS § 386–82; however, for the sake of clarification, we reiterate that, under HRS § 386–82, the two-year statute of limitations for the filing of a workers' compensation claim begins to accrue when the claimant's injury becomes manifest, as set forth under *Demond.*

B. *The LIRAB properly concluded that Hayashi's TMJ claim was timely filed.*

■ Hayashi suffered his work-related injury on May 21, 1991. However, he was not aware that he was suffering from a TMJ injury until June 4, 1992, when Dr. Sakoda noted the possibility of a TMJ injury and suggested that Hayashi see a specialist. Thus, Hayashi did not recognize the nature, seriousness, and probable compensable char-

acter of his injury until he was initially diagnosed with TMJ by Dr. Sakoda. *See Demond.*

■ The LIRAB properly determined that Hayashi's TMJ injury did not become manifest until June 4, 1992, when it was accurately diagnosed. An expert diagnosis validating a claim is not required in order to trigger the running of the statute of limitations. *See Buck v. Miles*, 89 Hawai'i 244, 250, 971 P.2d 717, 723 (1999) (holding that under the discovery rule, a plaintiff need only have factual knowledge of the elements necessary for an actionable claim).[2] However, with respect to Hayashi's claim, a TMJ injury is difficult to diagnose, and the necessary treatment cannot commence until the injury is properly identified. Thus, despite Hayashi's admission that he began to suffer from headaches, jaw pain and popping, and difficulty chewing within a week of the accident, the injury did not become manifest until June 4, 1992. Therefore, Hayashi's March 3, 1994 claim for workers' compensation benefits for his TMJ injury was properly filed within the two-year statute of limitations, as set forth in HRS § 386–82.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the LIRAB's decision and order filed on February 10, 1998 and the LIRAB's denial of the motion for reconsideration, dated August 11, 1998.

2. The opinion goes on to state that, "under the discovery rule, the statute of limitations begins to run 'the moment [the] plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter.'" *Buck* at 251, 971 P.2d at 724 (quoting *Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 90, 648 P.2d 689, 693–94 (1982)).