CHRISTOPHER R. ROGAN, Claimant-Appellant,
v.
NORTHWEST AIRLINES, INC., and LIBERTY MUTUAL INSURANCE CO., Employer/Insurance Carrier-Appellee.
No. 27806
Intermediate Court of Appeals of Hawaii.
February 27, 2008.
On the briefs:
Nelson H. Kinoshita, for Claimant-Appellant.
Brian G. S. Choy, Keith M. Yonamine, Karen R. Tashima, for Employer/Insurance Carrier-Appellee.

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA, AND FUJISE, JJ.
In this workers' compensation case, Claimant-Appellant Christopher R. Rogan (Rogan) was employed by Employer-Appellee Northwest Airlines, Inc. (Northwest) as a member of the ground crew working at Honolulu International Airport. Rogan sought workers' compensation benefits for bilateral hearing loss he attributed to exposure to high levels of noise during his 18-year employment with Northwest.
Rogan appeals from the February 8, 2006, Decision and Order of the Labor and Industrial Relations Appeals Board (LIRAB). The LIRAB granted Northwest's motion for summary judgment based on the LIRAB's determination that Rogan's hearing-loss claim was barred by the two-year statute of limitations set forth in Hawaii Revised Statutes (HRS) § 386-82 (1993). The LIRAB affirmed the decision of the Director of the Department of Labor and Industrial Relations (the Director), who had rejected Rogan's claim on the same ground.
In support of its grant of summary judgment, the LIRAB found that Rogan should have recognized the compensable nature of his hearing loss from as early as 1995, but no later than 1998, and that his claim was filed more than two years after the effects of the injury became manifest. The LIRAB identified the date of Rogan's claim as July 14, 2004, and concluded that his claim was barred by HRS § 386-82.
On appeal, Rogan argues that the LIRAB erred by granting Northwest's motion for summary judgment because there are genuine issues of material fact regarding: 1) when his hearing-loss injury, which is an occupational disease, became manifest; and 2) when Rogan became aware that he had suffered a compensable injury. For the reasons set forth below, we agree with Rogan that there are genuine issues of material fact regarding whether the statute of limitations bars his claim. We therefore conclude that it was improper for the LIRAB to decide his case pursuant to a motion for summary judgment. We vacate the LIRAB's Decision and Order and remand this case for an evidentiary hearing to resolve the disputed issues of material fact related to whether Rogan's claim is barred by the statute of limitations.

BACKGROUND
Rogan worked for Northwest as a member of the ground crew at the Honolulu International Airport for 18 years, beginning in 1984. Annual hearing examinations from 1995 to 2000 revealed a deterioration in Rogan's hearing, although some improvement in hearing was noted in the July 2000 test. The report of the July 2000 test states:
This test shows an improvement in hearing levels at the 2K, 3K, and 4K frequencies when compared to previous tests.
Your hearing test and evaluation did not show any recent ear-related problems according to current medical guidelines.
The reports of Rogan's hearing tests for 1998, 1999, and 2000 noted that Rogan answered questions about his hearing that indicated various conditions, including ear pain, severe ringing in his ears, fluctuating hearing losses, dizziness or imbalance, and feelings of ear fullness or discomfort. However, it was not until December 11, 2001, that Rogan was advised by a medical doctor to obtain bilateral hearing amplification.
In the meantime, on March 12, 2001, Rogan sustained a work injury that was unrelated to his hearing loss. Rogan suffered traumatic crush injuries to his lower spine and extremities when he was caught between two luggage carts at work. As a result, he was rendered disabled and was unable to return to work. Rogan filed a workers' compensation claim based on his traumatic crush injuries.
On November 13, 2001, Rogan had another hearing test which revealed binaural hearing loss that was moderately severe to severe. On December 11, 2001, William Cervantes, M.D., noted that Rogan's worsening hearing loss was likely a result of noise exposure, and Dr. Cervantes recommended binaural hearing amplification.
On April 19, 2002, Rogan filed a claim for workers' compensation benefits with the Department of Labor and Industrial Relations (DLIR) for hearing loss to both ears. Rogan filed this claim on form WC-5 and identified the date of the "accident" as March 12, 2001, which was the day he stopped working due to his traumatic crush injuries.[1] In submitting his claim for hearing loss, Rogan altered the standard WC-5 form by deleting the portion of the form that states, "I hereby authorize any physician and/or hospital to release any information related to any treatment rendered me." On July 12, 2004, Rogan filed an unaltered WC-5 form which included the medical information waiver.

DISCUSSION

I.
The statute of limitations for filing a claim for workers' compensation benefits is set forth in HRS § 386-82, which in relevant part provides:
The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations (1) within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest, and (2) within five years after the date of the accident or occurrence which caused the injury.
The statute of limitations on a workers' compensation claim begins to run once the employee, "as a reasonable [person], should [have] recognize[d] the nature, seriousness and probable compensable character of his [or her] injury or disease." Hayashi v. Scott Company, 93 Hawai`i 8, 12, 994 P.2d 1054, 1058 (2000) (some brackets in original and some added). If "a condition [results in] no loss of function and [requires] no treatment[, it] should not be considered an injury that begins the timing period which limits recovery under the workers' compensation act." Miyake v. Welders Inc., 71 Haw. 269, 272, 788 P.2d 170, 172 (1990) (construing the term "injury" as used in the second paragraph of HRS § 386-82, which governs claims for injury caused by exposure to asbestos). The Miyake court noted that starting the statute of limitations before the employee's condition results in loss of function or requires treatment "would potentially deprive a claimant who has a benign or ignorable condition that later becomes severe or disabling" of the ability to obtain benefits. Id. at 272, 788 P.2d at 171.
Rogan's claim of hearing loss due to noise exposure constitutes a claim for injury due to an occupational disease. See Kris A. Kemper, Annotation, When Limitations Period Begins to Run as to Claim for Disability Benefits for Contracting of Disease under Workers' Compensation or Occupational Diseases Act, 86 A.L.R.5th 295, 370-83 (2001) (citing cases which generally treat hearing loss caused by ambient noise levels in the workplace as an occupational disease). In Flor v. Holguin, 94 Hawai`i 70, 9 P.3d 382 (2000), the Hawai`i Supreme Court noted that:
Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date. In the search for an identifiable instant in time which can perform such necessary functions as to start claim periods running, establish claimant's right to benefits, determine which year's statute applies, and fix the employer and insurer liable for compensation, the date of disability has been found the most satisfactory. Legally, it is the moment at which the right to benefits accrues; as to limitations, it is the moment at which in most instances the claimant ought to know he has a compensable claim; and, as to successive insurers, it has the one cardinal merit of being definite, while such other possible dates as that of the actual contraction of the disease are usually not susceptible to positive demonstration.
Id. at 82, 9 P.3d at 394 (quoting Lowery v. McCormick Asbestos Co., 300 Md. 28, 475 A.2d 1168, 1174 (1984) (quoting 4 Larson, Workmen's Compensation Law, § 95.21 (1981)). The supreme court adopted the "date of disability" as the date on which the statute of limitations on an occupational disease claim would begin to run. Id. at 82-83, 9 P.3d at 394-95. It further concluded that "[t]he determination of the precise date on which a claimant has become disabled due to an occupational disease is a factual determination to be made by the Director based on the circumstances of each case." Id. at 82, 9 P.3d at 394.
The claimant in Flor was a dental hygienist who contracted hepatitis C during the course of a career in which she worked for numerous dentists and periodontists. Id. at 74, 9 P.3d at 386. The claimant stopped working due to health problems caused by the hepatitis C. Id. The Hawai`i Supreme Court held that the claimant could rely on either her last day of employment or the date on which her disabling condition was diagnosed as the "date of disability":
We hold that a claimant in a case arising under the "injury-by-disease" prong of HRS § 386-3 may rely upon the foregoing "date of disability," which typically is the last day of employment but, as indicated supra, may also be the date of diagnosis of the disabling condition, in order to identify the "date of injury" required by the DLIR in connection with the filing of a workers' compensation claim. Flor was therefore justified in identifying either the date on which she learned of her diagnosis ( i.e., April 17, 1996) or the date on which she ceased working ( i.e., May 4, 1996) as the "date of injury" on her claim form.
Id. at 83, 9 P.3d at 395.

II.
Rogan contends that because there are genuine issues of material fact regarding whether his claim is barred by the statute of limitations, it was improper for the LIRAB to grant summary judgment in favor of Northwest. We agree.
The Hawai`i Supreme Court has stated that
summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
Querubin v. Thronas, 107 Hawai`i 48, 56, 109 P.3d 689, 697 (2005). Summary judgment cannot be used to deprive a party of the right to a trial on disputed factual issues.
judge ruling on a motion for summary judgment cannot summarily try the facts; his [or her] role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he [or she] offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. This is true even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper.
Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 224, 629 P.2d 635, 638-39 (1981) (quoting 10 Wright and Miller, Federal Practice and Procedure: Civil § 2725 (1973)).
We conclude that there are genuine issues of material fact concerning the "date of disability" for Rogan's claim for hearing loss. Rogan contends that he was unaware of his hearing loss until he was examined by Dr. Cervantes in December 2001, and that Rogan did not receive the reports of the hearing tests upon which the LIRAB relied in its decision. Rogan further argues that prior to 2001, the hearing-test reports noted changes in his hearing and advised him to use hearing protection, but did not recommend that he use a hearing aid.
With respect to the determination of the "date of disability," we conclude that, among other things, there are material factual disputes regarding when Rogan's hearing loss developed into a compensable injury, see Flor, 94 Hawai`i at 81-83, 9 P.3d at 393-95, when Rogan's hearing loss constituted a loss of function that required treatment, see Miyake, 71 Haw. at 272, 788 P.2d at 172, and when a reasonable person in Rogan's position "should [have] recognize[d] the nature, seriousness and probable compensable character of his injury or disease." Hayashi, 93 Hawai`i at 12, 994 P.2d at 1058. The LIRAB was required to resolve these material factual disputes in determining the "date of disability" on which the statute of limitations on Rogan's hearing-loss claim began to run. Accordingly, the LIRAB erred in resolving the statute of limitations question on Northwest's motion for summary judgment. On remand, the LIRAB is directed to enter findings of fact and conclusions of law that explain in detail the LIRAB's reasoning and analysis in determining the "date of disability" with respect to Rogan's hearing-loss claim.

III.
In his November 5, 2004, decision, the Director found that the claim for benefits Rogan filed on April 19, 2002, was unacceptable because it was filed on an altered WC-5 form that deleted the medical information waiver. The Director therefore concluded that Rogan did not make a claim for benefits until July 12, 2004, when he filed an unaltered WC-5 form. The LIRAB did not specifically address whether the altered WC-5 form tolled the statute of limitations but simply concluded that Rogan's claim was filed on July 12, 2004.
HRS § 386-82 does not require that in order to toll the statute of limitations, the claim for benefits must include the claimant's medical information waiver. Under Hawaii Administrative Rules (HAR) § 12-10-30, an employee wishing to pursue a claim is required to file a WC-5 form provided by the DLIR. HAR § 12-10-30 further provides that the WC-5 form "shall authorize the release of medical documents pertaining to or having a bearing on the injury." HAR § 12-10-30, however, does not provide that the statute of limitations will continue to run unless a WC-5 form with the medical information waiver is filed.
The Director has the authority to dismiss a claim if a claimant refuses to authorize the release of relevant medical information. However, there is nothing in the record to indicate that the Director took action to dismiss the claim Rogan filed on April 19, 2002, on the altered WC-5 form because the form did not contain the medical information waiver. We conclude that the claim filed by Rogan on the altered WC-5 form tolled the statute of limitations until such time as the Director acted to dismiss the claim based on Rogan's failure to authorize the release of relevant medical information. The record does not show that the Director refused to file or took action to dismiss Rogan's claim because Rogan submitted an altered WC-5 form or that Northwest sought to dismiss Rogan's claim on that basis. Furthermore, the record does not show that Rogan was ever notified that his altered WC-5 form was inadequate and unacceptable until the Director issued his decision on November 5, 2004. By that time, however, Rogan had already filed a revised WC-5 form on July 12, 2004, that contained the medical information waiver.
We conclude that the altered WC-5 form that Rogan filed on April 19, 2002, tolled the statute of limitation until he filed the unaltered WC-5 form on July 12, 2004, and that April 19, 2002, is the date of the filing of Rogan's hearing-loss claim for statute of limitations purposes. Our conclusion is consistent with Hawai`i decisions in automobile insurance cases which have held that a claim submitted to an insurer within the statute of limitations period will toll the running of the statute of limitations for filing suit or seeking arbitration until the claim is denied. See State Farm Mut. Auto Ins. Co. v. Murata, 88 Hawai`i 284, 288-89, 965 P.2d 1284, 1288-89 (1998); Wright v. State Farm Mut. Auto Ins. Co., 86 Hawai`i 357, 361-62, 949 P.2d 197, 201-02 (App. 1997). It is also consistent with decisions from other jurisdictions that have tolled the statute of limitations based on the filing of a judicial pleading that later was determined to be defective. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 457-58 (1990) (noting that the Court has allowed equitable tolling of the statute of limitations where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period"); Kirkaldy v. Rim, 734 N.W.2d 201, 203 (Mich. 2007) (holding that medical malpractice complaint filed with a defective affidavit of merit tolls the statute of limitations until the affidavit is successfully challenged in subsequent judicial proceedings).

CONCLUSION
We vacate the LIRAB's February 8, 2006, Decision and Order and remand the case for further proceedings consistent with this Memorandum Opinion.
NOTES
[1] The Department of Labor and Industrial Relations apparently changed the date of the "accident" on Rogan's hearing-loss claim to March 13, 2001, to avoid confusion with his traumatic-crush-injuries claim.